

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

NO. PD-1236-12

**ANTHONY RAY DAVISON, Appellant**

**v.**

**THE STATE OF TEXAS**

**ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
FROM THE ELEVENTH COURT OF APPEALS
WALKER COUNTY**

PRICE, J., delivered the opinion for a unanimous Court. JOHNSON, J., filed a concurring opinion.

## O P I N I O N

In three grounds for review, the appellant contends that the court of appeals erred to hold that 1) error in the failure to administer one of the admonishments of Article 26.13 of the Texas Code of Criminal Procedure was harmful under Rule 44.2(b) of the Texas Rules of Appellate Procedure, 2) his claim that his guilty plea was therefore rendered involuntary for purposes of the Due Process Clause of the Fourteenth Amendment was subject to

ordinary procedural default and was therefore forfeited because not raised by objection at trial, and 3) any constitutional error was, in any event, harmless under the same rule that governs the standard for harm analyses for claims of statutory error under Article 26.13.[1] We granted the appellant's petition for discretionary review in order to address all three holdings. We will affirm the judgment of the court of appeals.

## FACTS AND PROCEDURAL POSTURE

On December 4, 2009, the appellant entered an open plea of guilty to the offense of burglary of a building, ordinarily a state jail felony.[2] Prior to accepting his plea, the trial court admonished the appellant as to the range of punishment for such an offense. Both in a written "Guilty Plea Memorandum," which was admitted during the plea proceeding,[3] and orally, the trial court informed the appellant that "[a] state jail felony has a possible punishment of not less than 180 days and no more than two years in a state jail facility and a fine not to exceed $10,000."[4] But the appellant also pled true to three felony enhancement

---

[1] TEX. CODE CRIM. PROC. art. 26.13; TEX. R. APP. P. 44.2(b).

[2] TEX. PENAL CODE § 30.02(a)(1) & (c)(1).

[3] *See* TEX. CODE CRIM. PROC. art. 26.13(d) (permitting written admonishments so long as they are signed by the defendant and his attorney).

[4] TEX. PENAL CODE § 12.35(a) & (b).

paragraphs, which made him susceptible to punishment as a second degree felon.[5]

On April 1, 2009, some four months after accepting the appellant's guilty plea, the trial court conducted the punishment hearing. The community supervision officer who prepared the pre-sentence investigation report testified that, taking into account the enhancement paragraphs, the appellant was subject to punishment for "a second degree felony." She did not specify a range of punishment for that level of offense. Later, however, just before the parties made their closing arguments at the punishment hearing, the trial court remarked that the enhancement provisions made the case "punishable by two to twenty." He did not mention a fine or otherwise elaborate.[6] After closing arguments, the trial court imposed a sentence of twenty years, the maximum for a second degree felony, but no fine. At no point in any of these proceedings did the trial court ever formally admonish the appellant that, as enhanced, the charges against the appellant exposed him to a range of

---

[5] TEX. PENAL CODE § 12.425(b) (formerly, and as of the date the appellant committed his offense, § 12.42(a)(2), *see* Acts 2011, 82nd Leg., ch. 834, p. 2104-05, §§ 2 & 5, eff. Sept. 1, 2011). The indictment contains three "Enhancement Paragraphs" alleging previous sequential burglary convictions, and in the "Guilty Plea Memorandum" the appellant "agree[d] and confess[ed] that all the acts and allegations in said pleading are true and correct." We cannot find any other place in the record in which the appellant actually pled true to the enhancement counts, either during the plea proceeding or later during the sentencing hearing, although the judgment also reflects that he pled true to the enhancement paragraphs. Because the appellant was ultimately punished as a second degree felon, and there was no complaint on appeal that the appellant did *not* validly plead true to the enhancement paragraphs, we will accept for purposes of discretionary review that he did.

[6] At the December 4th hearing, the trial court did admonish the appellant that he would be susceptible to a $10,000 fine—the maximum fine available for either a state jail felony or a second degree felony. TEX. PENAL CODE §§ 12.33(b) & 12.35(b).

punishment, as a second degree felon, of two to twenty years in the penitentiary.

The appellant raised two complaints on direct appeal. First, he argued that the trial court failed to admonish him as to the applicable range of punishment, as required by Article 26.13(a)(1), since "the range of punishment attached to the offense" was that for a second degree felony rather than a state jail felony.[7] Second, he argued that the failure to admonish him with respect to the applicable range of punishment did not simply violate the statute, but also served to render his guilty plea involuntary for purposes of the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

The Eleventh Court of Appeals rejected both contentions.[8] Regarding the appellant's first argument, the court of appeals held that: 1) the trial court erred in failing to admonish the appellant prior to accepting his guilty plea as required by Article 26.13(a); 2) because the statutory admonishment is in the nature of a waiver-only right, this error could be asserted for the first time on appeal; but 3) the error was harmless under Rule 44.2(b), the standard for non-constitutional errors.[9] Having thus rejected the appellant's statutory claim, the court of appeals declined to reach the merits of his constitutional claim for two reasons. First, it held that, unlike the appellant's statutory claim, his constitutional claim was subject to

---

[7] TEX. PENAL CODE § 26.13(a)(1).

[8] *Davison v. State*, 377 S.W.3d 897 (Tex. App.—Eastland 2012).

[9] *Id*. at 900-01.

procedural default and was forfeited by his failure to raise it at some point during the proceedings in the trial court; and second, it held that, even if properly preserved, any constitutional error was harmless—*also* utilizing the standard contained in Rule 44.2(b).[10] In reaching this last conclusion with respect to the proper harm analysis, the court of appeals construed two of this Court's past opinions to stand for the proposition that Rule 44.2(b) applies even to claims that a particular jury admonishment is indispensable to the establishment of a *constitutionally* voluntary and intelligent guilty plea.[11]  We granted the appellant's petition for discretionary review to evaluate each of these holdings.

## THE LEGAL BACKDROP

### Due Process

Federal due process requires that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences."[12]  A criminal defendant who enters a plea of guilty has by definition relinquished his Sixth Amendment rights to a trial by jury and to confront

---

[10] *Id*. at 901.

[11] *Id*. (citing *Aguirre-Mata v. State*, 992 S.W.2d 495 (Tex. Crim. App. 1999) (hereinafter, "*Aguirre-Mata I*), and *Aguirre-Mata v. State*, 125 S.W.3d 473 (Tex. Crim. App. 2003) (hereinafter, "*Aguirre-Mata II*")).

[12] *Brady v. United States*, 397 U.S. 742, 748 (1970);  *Mendez v. State*, 138 S.W.3d 334, 344 (Tex. Crim. App. 2004).

the witnesses against him, as well as his Fifth Amendment privilege against self-incrimination.[13] "For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.'"[14] A criminal defendant who is induced to plead guilty in a state court in total ignorance of the precise nature of the charge and the range of punishment it carries has suffered a violation of procedural due process.[15] Such a defendant

> has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt. Without adequate notice of the nature of the charge against him, or proof that he in fact understood the charge, the plea cannot be voluntary in this . . . sense.[16]

For his guilty plea to be constitutionally valid, then, the defendant must have an actual awareness of the nature and gravity of the charges against him and of the constitutional rights and privileges that he necessarily relinquishes—in short, "a full understanding of what the plea connotes and of its consequence."[17]

---

[13] *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

[14] *Id*. (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

[15] *Smith v. O'Grady*, 312 U.S. 329 (1941).

[16] *Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976).

[17] *Boykin v. Alabama*, 395 U.S. 238, 244 (1969); *Aguirre-Mata II*, *supra*, at 475. We observed in passing in *Aguirre-Mata II* that it "literally satisfies" the language we quote from *Boykin* above to admonish a defendant pleading guilty of "the factual elements of the charged crime" and the "various constitutional rights" that are necessarily waived, "without [also] admonishing [him] on the range of

What the United States Supreme Court's 1969 opinion in *Boykin v. Alabama* contributed to this due process jurisprudence "was the requirement that the record must affirmatively disclose that a defendant who pleaded guilty entered his plea understandingly and voluntarily."[18] Thus, "when the record of a criminal conviction obtained by guilty plea contains no evidence that a defendant knew of the rights he was putatively waiving, the conviction must be reversed."[19] We have noted on more than one occasion, however, "that *Boykin* did not specifically set out what must be 'spread on the record' to comply with [its] mandate."[20] Moreover, "*Boykin* clearly did not hold that due process requires the equivalent of the Article 26.13(a) admonishments or an admonishment on the range of punishment."[21] So long as the record *otherwise* affirmatively discloses that the defendant's guilty plea was adequately informed, due process is satisfied. For the appellant to prevail on his constitutional claim, therefore, it is not enough that the record is unrevealing with respect to whether he was admonished by the trial court; the record must also be silent with respect to

punishment[.]" *Id*. at 475 n.4.

[18] *Brady*, *supra*, at 747 n.4.

[19] *United States v. Benitez*, 542 U.S. 74, 84 n.10 (2004). *See also Gardner v. State*, 164 S.W.3d 393, 399 (Tex. Crim. App. 2005) (citing *Benitez* for this proposition).

[20] *Gardner*, *supra*, at 399 (quoting *Aguirre-Mata II*, *supra*, at 475).

[21] *Aguirre-Mata II*, *supra*, at 475-76. *See also Vannortrick v. State*, 227 S.W.3d 706, 708 (Tex. Crim. App. 2007) ("The Article 26.13 admonishments . . . are not themselves constitutionally required.).

whether he was *otherwise* provided, or nevertheless aware of, the requisite information to render his guilty plea voluntary and intelligent.

## Article 26.13

Article 26.13(a)(1) mandates that, "[p]rior to accepting a plea of guilty or plea of nolo contendere, the court shall admonish the defendant of . . . the range of punishment attached to the offense[.]"[22] Although the statute is obviously intended to facilitate the entry of adequately informed pleas of guilty or nolo contendere,[23] any claim that the trial court failed to follow the mandate of the statute is separate from the claim that the guilty plea was accepted in violation of due process.[24] Because Article 26.13(a) "puts a duty on the trial court to act *sua sponte*," we held in *Bessey v. State* that it "creates a right that is waivable only."[25] Therefore, a breach of the statute may be raised for the first time on appeal.[26] But

---

[22] TEX. CODE CRIM. PROC. art. 26.13(a)(1).

[23] *Carranza v. State*, 980 S.W.2d 653, 656 (Tex. Crim. App. 1998); *Aguirre-Mata I*, *supra*, at 499; *Aguirre-Mata II*, *supra*, at 476; *Vannortrick*, *supra*, at 708.

[24] *Anderson v. State*, 182 S.W.3d 914, 918 (Tex. Crim. App. 2006); *Gardner*, *supra*, at 398; *Burnett v. State*, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002); *Fakeye v. State*, 227 S.W.3d 714, 716 (Tex. Crim. App. 2007).

[25] 239 S.W.3d 809, 812 (Tex. Crim. App. 2007).

[26] *Id*.

this does not mean that a violation of the statute is not subject to an analysis for harm.[27] Indeed, because such a claim is predicated solely upon a statutory violation, the standard for determining harm that pertains to claims of non-constitutional error applies—Rule 44.2(b).[28] In assaying harm under this provision, a reviewing court must look to the record as a whole to determine whether the defendant was aware of the particular information upon which he should have been admonished—notwithstanding the lack of an admonishment—prior to the time that the trial court accepted his plea.[29] A record that is completely silent with respect to whether a defendant was actually aware of the range of punishment, notwithstanding the lack of judicial admonishment, supports the inference that he was *not* in fact so aware for purposes of the Rule 44.2(b) harm analysis.[30]

## ANALYSIS

### Rule 44.2(b) Harm Analysis

The appellant does not take issue with the court of appeals for looking to the entire record to determine whether violation of the admonishment statute was harmless—and with

---

[27] *Cain v. State*, 947 S.W.2d 262, 265 (Tex. Crim. App. 1997).

[28] *Carranza*, *supra*, at 658; *Aguirre-Mata I*, *supra*, at 499; *Burnett*, *supra*, at 637-38; *Anderson*, *supra*, at 918; *Vannortrick*, *supra*, at 708.

[29] *Burnett*, *supra*, at 638; *Anderson*, *supra*, at 919; *Vannortrick*, *supra*, at 709; *Fakeye*, *supra*, at 716.

[30] *Burnett*, *supra*, at 638; *Vannortrick*, *supra*, at 710-11; *Fakeye*, *supra*, at 717 & n.4.

good reason, since that has been this Court's consistent holding.[31]  But he argues that the court of appeals failed to examine the entire record with a view to what it may reveal that he knew "at the relevant time, the time at which he entered the guilty plea."[32] Moreover, he faults the court of appeals's conclusion that his failure to "protest" or "claim surprise" when mention was made at the punishment hearing that his plea of true to the enhancements paragraphs made him punishable for "a second degree felony" with a range of "two to twenty" indicates he had actually been aware of the applicable range of punishment four months earlier when he entered his plea.  Such a conclusion amounts to nothing more, he contends, than a rule of procedural default, requiring him to object at the trial court level before he may raise a violation of Article 26.13 on appeal, contrary to this Court's manifest holding in *Bessey*.[33]  While there is some rhetorical force to these arguments, in the final analysis they misperceive the court of appeals's holding.

Although its opinion is not as clear as we might wish, we do not believe the court of appeals meant to hold that the failure to timely admonish the appellant as to the correct range of punishment was harmless simply because he *later* learned the correct range, though he had not been so aware at the time he entered his plea.  Nor do we believe the court of appeals

---

[31]  *See* note 29, *ante*.

[32]  Appellant's Brief at 11 (citing *Vannortrick*, *supra*, at 712).

[33]  *Bessey*, *supra*, 812.

meant to impose a rule of forfeiture, holding that the appellant's failure to object at some point after he entered his guilty plea prevents him from complaining on appeal of the lack of admonishment "at the time he entered his plea."[34] On the contrary, the court of appeals entertained the appellant's claim on the merits, found error, and proceeded to the Rule 44.2(b) harm analysis. The appellant's failure to exhibit alarm at the punishment phase was a circumstance relevant to the court of appeals's harm analysis. At the time he entered his guilty plea, the appellant had received notice of the enhancement paragraphs in the indictment, and he had explicitly acknowledged in the "Guilty Plea Memorandum" that he had read them and that they were "true and correct." This fact, together with the appellant's later nonchalance, led the court of appeals to infer that, *even at the time of the entry of the plea*, the appellant must have been aware that the enhancement paragraphs served a purpose, subjecting him to a greater range of punishment than that for the naked charge of burglary of a building, about which he had been formally admonished. Otherwise, it would be reasonable to expect him to express some "surprise" or "protest" when mention was made during the punishment hearing of a significantly greater grade of offense and range of punishment—not to mention, when he was actually assessed a twenty year sentence.

We employed similar reasoning in our own opinion in *Burnett v. State*, focusing—at

---

[34] *Vannortrick*, *supra*, at 712.

least in part—upon comparable post-entry-of-the-plea circumstances.[35]  There, the appellant

pled guilty before a jury that then proceeded to assess his punishment, but he was never

admonished by the trial court as to the range of punishment.[36]  After the jury was sworn and

Burnett entered his guilty plea, the jury heard punishment-phase evidence.  Then,

> [t]he jury charge, which detailed the range of punishment, was read aloud in
> open court.  Defense counsel did not object to the charge.  There was no on-
> the-record reaction or protest from appellant when the charge was read, when
> the jury returned its verdict on punishment, or at appellant's sentencing.  Nor
> did defense counsel attempt to develop a record to support a motion for new
> trial on the grounds that the plea was not knowing and voluntary.[37]

These were not the only circumstances that led us to infer that Burnett was actually aware of

the range of punishment when he entered his guilty plea despite the absence of an

admonishment, but we certainly regarded them as relevant.  While the inference of actual

awareness is less compelling on the more limited facts of this case, it is nonetheless available,

and the court of appeals did not err to follow our lead in concluding that the appellant's

substantial rights were not affected by the trial court's faulty admonishment.[38]

### *Boykin* and Procedural Default

The first reason the court of appeals gave for rejecting the appellant's constitutional

---

[35]  *Burnett*, *supra*, at 640-41.

[36]  *Id*. at 636, 640.

[37]  *Id*. at 640-41.

[38]  TEX. R. APP. P. 44.2(b).

claim is that the appellant did not preserve it with a trial objection or motion for new trial.[39]

For the proposition that such preservation is required, the court of appeals cited our opinion in *Mendez v. State*.[40] We agree with the appellant, however, that *Mendez* simply does not support this proposition.[41] We also agree that it would be anomalous to hold that a claim of *Boykin* error is subject to procedural default, especially considering that we have already held, in *Bessey*, that a claim based upon the absence of one of the Article 26.13 admonishments, which are meant to facilitate the voluntariness of guilty pleas but are not themselves constitutionally required, is not subject to forfeiture.

*Boykin* operates like a rule of default: Unless the appellate record discloses that a defendant entered his guilty plea "voluntarily and understandingly[,]" a reviewing court must presume that he did *not*, and rule accordingly.[42] For a reviewing court nevertheless to require

---

[39] *Davison*, *supra*, at 901.

[40] 138 S.W.3d 334 (Tex. Crim. App. 2004).

[41] The issue in *Mendez* was whether a trial court has an obligation, *sua sponte*, to withdraw a defendant's guilty plea when evidence subsequently arises "that is inconsistent with guilt." *Id*. at 336. We held that the trial court has no such obligation, and that the defendant must seek to withdraw his plea before error may be predicated upon the trial court's failure to do so. *Id*. at 350. This holding was predicated in large measure on the fact that due process does not prohibit an innocent defendant from nevertheless pleading guilty—so long as he does so voluntarily and intelligently. *Id*. at 344. While we mentioned *Boykin* in passing, we expressed no opinion whether an appellant must preserve *Boykin* error in the trial court before he may assert it on appeal. *Id*. The court of appeals cited page 339 of *Mendez* as authority for the proposition that *Boykin* error must be preserved, but we find nothing at that juncture of our opinion that supports it.

[42] *Boykin*, *supra*, at 244.

an appellant to preserve *Boykin* error at the trial court level would turn this constitutional rule of default on its head, reversing the presumption. After all, an appellate court that is required to presume from an unrevealing record that the accused did not enter an adequately informed guilty plea cannot reasonably expect him to display the wherewithal to object to his lack of awareness at the trial court level as a predicate to complaining on appeal. Instead, we regard the rule of *Boykin* to be in the nature of a systemic requirement, imposing a duty on the trial court to make the record demonstrate the knowing and voluntary quality of a guilty plea.[43] The system simply will not tolerate the entry of a guilty plea on the basis of a record devoid of any indication that the defendant possessed "a full understanding of what the plea connotes and of its consequence."[44] Therefore, a pure *Boykin* claim—that is to say, a claim that the record is absolutely unrevealing with respect to whether a guilty plea was entered intelligently—is not subject to ordinary principles of procedural default.[45] The court of appeals erred to the extent that its opinion may be read to conclude otherwise.[46]

---

[43] *Marin v. State*, 851 S.W.2d 275, 279 (Tex. Crim. App. 1993). The Supreme Court observed in *Boykin* that "[w]hat is at stake for an accused facing death or imprisonment demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and its consequence." 395 U.S. at 243-44.

[44] *Boykin*, *supra*, at 244.

[45] *Marin*, *supra*, at 280; *Mendez*, *supra*, at 340.

[46] This is not to say that every appellate claim of purported *Boykin* error is actually predicated upon a record that is *totally* silent with respect to the informed nature of the guilty plea, so as to trigger the appellate default. Far from it. Indeed, as our analysis of the merits of the appellant's due process

### *Boykin* and Harmless Error

The second reason the court of appeals rejected the appellant's constitutional claim was that it had already concluded that the improper statutory admonishment was harmless under the standard of Rule 44.2(b).[47]  It construed several of our cases to stand for the proposition that this same standard for determining harm governs *Boykin*-based claims as well.[48]  In this, the court of appeals was also mistaken.

We have taken care in our case law to differentiate appellate claims based upon a violation of the statutory admonishment requirement of Article 26.13 from appellate claims based upon due process—that a guilty plea was involuntary because inadequately informed.[49] In none of our cases, including the two expressly cited by the court of appeals,[50] have we ever

---

claim demonstrates, *see post*, at 16-19, he fails to make out a case for pure *Boykin* error in this case, and must therefore lose on the merits.  Many (if not most) claims of *Boykin* error will similarly prove to be without merit—just as many claims of, *e.g.*, a lack of jurisdiction in the convicting court (the quintessential systemic requirement, *see Marin*, *supra*, at 279) will ultimately lack merit.  Appellate courts must nevertheless entertain the merits of such claims, however frivolous, rather than declare them to be procedurally defaulted.

[47]  *Davison*, *supra*, at 901.

[48]  *Id*.

[49]  *See* notes 23 & 24, *ante*.

[50]  *See* note 11, *ante*.  In *Aguirre-Mata I*, we declined to apply the constitutional harm standard expressly because "Appellant did not claim on direct appeal that the trial court's failure to admonish him of the range of punishment caused his plea to be obtained in violation of the Due Process Clause of the Fifth Amendment made applicable to the States through the Fourteenth Amendment."  992 S.W.2d at 499.  And a careful reading of *Aguirre-Mata II* reveals that we did not purport to evaluate a constitutional claim for harm there either, instead holding that a claim that the trial court erred in

held that a non-constitutional standard for harm should apply to a claim that a guilty plea was so ill-informed as to render it involuntary under the Due Process Clause. Nor could we, consistent with Texas Rule of Appellate Procedure 44.2(a), which mandates that, so long as "the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment."[51] The court of appeals erred to avoid the merits of the appellant's due process claim simply because it had already found his statutorily based claim to be harmless under Rule 44.2(b). Any constitutional error that the record may reveal must be governed by Rule 44.2(a).

### *Boykin* Error

The court of appeals did not determine in its opinion whether *Boykin* error actually occurred in this case, pretermiting that analysis with its faulty conclusions that any such error was forfeited and, in any event, harmless under Rule 44.2(b).[52] Ordinarily, we would remand a cause to the lower appellate court when our rejection of its basis for disposition gives rise to another "issue [that was] raised and [now becomes] necessary to final disposition of the

---

failing to admonish as required by Article 26.13 does not, without more, make out a constitutional claim, much less call for a constitutional harm analysis. 125 S.W.3d at 474.

[51] TEX. R. APP. P. 44.2(a).

[52] *Davison*, *supra*, at 901.

appeal[,]"[53] but which the court of appeals has not already addressed, since in our capacity as a discretionary review court, we review "decisions" of the courts of appeals.[54] But there are exceptions to this practice, and when the proper resolution of the remaining issue is clear, we will sometimes dispose of the case in the name of judicial economy.[55] We regard this as such a case, for the reasons to follow.

In the "Guilty Plea Memorandum," which the appellant signed, he was admonished with respect to each of the particular constitutional rights mentioned in *Boykin* that a defendant pleading guilty necessarily waives—trial by jury, confrontation, and the privilege against self-incrimination. Thus, the record is not altogether silent with respect to whether the appellant understood the consequences of his plea. In *Aguirre-Mata II*, "[w]e have found no Supreme Court case . . . holding that a trial court's failure to admonish a guilty-pleading defendant on the range of punishment renders the guilty plea invalid."[56] But even assuming that a silent record with respect to the appellant's awareness of the range of punishment is alone sufficient to trigger *Boykin*'s appellate presumption, the record in this case is not totally

[53]

TEX. R. APP. P. 47.1.

[54]

*E.g.*, *Benavidez v. State*, 323 S.W.3d 179, 183 & n.20 (Tex. Crim. App. 2010); *Zuliani v. State*, 353 S.W.3d 872 (Tex. Crim. App. 2011); *Fuller v. State*, 363 S.W.3d 583, 589 n.30 (Tex. Crim. App. 2012).

[55]

*E.g.*, *Johnston v. State*, 145 S.W.3d 215, 224 (Tex. Crim. App. 2004).

[56]

125 S.W.3d at 475 n.7.

"silent" with respect to appellant's knowledge of the applicable range of punishment when he entered his plea.[57]

At the plea proceeding in *Boykin*, "[s]o far as the record show[ed], the judge asked no questions of [Boykin] concerning his plea, and [Boykin] did not address the court."[58] Moreover, "the record [was] wholly silent [and threw] no light on" whether some trial strategy may have played a role in Boykin's decision to plead guilty.[59] Here, by contrast (and as the court of appeals identified as part of its Rule 44.2(b) harm analysis), from the record as a whole it may be inferred that, although the appellant's guilty plea was open, not negotiated, he did not plead in ignorance of the applicable range of punishment. Thus, the record in this case fails to engage *Boykin*'s appellate presumption that due process was violated because the appellant entered an unintelligent guilty plea. Nor does the record affirmatively refute the inference, deriving from the appellant's failure to protest when the greater punishment range that was mentioned during the punishment proceedings was actually imposed upon him at sentencing, that he must have been aware of his susceptibility to that greater range—even as of the time he entered his guilty plea—despite the trial court's inaccurate admonishment.

---

[57] *Boykin*, *supra*, at 243.

[58] *Id*. at 239.

[59] *Id*. at 240.

In short, for essentially the same reasons that the court of appeals found that any constitutional violation was harmless (albeit under the wrong subsection of Rule 44.2), and therefore declined to reach the merits of his due process claim, we now conclude that the appellant has failed to establish the merits of his due process claim.[60]

## CONCLUSION

For the foregoing reasons, although we reject certain aspects of the court of appeals's reasoning, we ultimately affirm its judgment.

DELIVERED:      May 22, 2013
PUBLISH

---

[60]

Our holding today would not foreclose the appellant from obtaining relief in a post-conviction habeas corpus proceeding in the event that he may be able to allege and prove facts beyond what is revealed in the appellate record that are sufficient to establish to our satisfaction that he was *in fact* unaware of the accurate range of punishment at the time he entered his guilty plea in this cause. We merely hold today that the appellate record does not trigger the *Boykin* presumption or otherwise demonstrate a violation of due process.