

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

## NO. PD-0646-13

---

### IRVING MAGANA GARCIA, Appellant

### v.

### THE STATE OF TEXAS

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE THIRTEENTH COURT OF APPEALS
### HIDALGO COUNTY

---

**KELLER, P.J., delivered the opinion of the Court in which MEYERS, PRICE, WOMACK, KEASLER and HERVEY, JJ., joined. ALCALA, J., filed a dissenting opinion in which JOHNSON and COCHRAN, JJ., joined.**

The question in this case is whether the record must contain a waiver colloquy between the trial judge and the defendant before an appellate court may conclude that a defendant has waived his right to an interpreter. We hold that the record does not have to contain such a colloquy, as long as the record otherwise affirmatively reflects that a waiver occurred. Concluding that the record affirmatively reflects a waiver in the present case, we affirm the judgment of the court of appeals.

### I. BACKGROUND

### A. Trial

Appellant is a native Spanish speaker who does not understand English. The trial judge was aware of this fact at trial but did not appoint an interpreter.

At a motion-for-new-trial hearing, appellant's trial counsel testified that (1) he is fully bilingual and had conversations with appellant in Spanish, (2) he told appellant that he did not want an interpreter because it would be very distracting for the jury and it would make it harder for him to concentrate on what he was doing,[1] (3) he told appellant that he would provide a very brief summary of each witness's harmful testimony after the testimony or on break, which he did, and (4) when he told appellant that he did not want an interpreter, appellant replied (in Spanish), "Whatever you want." Trial counsel also testified that he did not explain to appellant that his right to have the proceedings interpreted in Spanish was based upon the Confrontation Clause in both the federal and state constitutions. When asked "whether or not the Defendant was aware he could have gotten an interpreter from the Judge so that the client could understand the Spanish language," trial counsel responded, "I don't believe so, sir." Trial counsel was further asked, "Was there ever a hearing where you and the client, in front of the Judge, waived his right to have an interpreter?" Trial counsel replied, "I don't believe so." When asked whether he ever told the judge that he did not want an interpreter, trial counsel replied, "I don't believe I did."

Appellant also testified at the motion-for-new-trial hearing. He explained that counsel told him that he had a right to an interpreter but that counsel said he would not recommend that because having one would distract him and not let him concentrate very well. Appellant also testified that

---

[1] Trial counsel specifically testified that he was concerned that appellant would try to ask the interpreter questions while counsel was trying to concentrate on answers or the next question. In response to the question, "And that decreases your ability to be a good lawyer with all this conversation going on right beside you," trial counsel replied, "I believe so. It's also very distracting to the jury."

he agreed to not request an interpreter because [if he had an interpreter] his attorney was not going to be able to concentrate in defending him.

The prosecutor testified that she asked defense counsel before trial, "Aren't you going to have an interpreter for your client?" According to the prosecutor, defense counsel told her that he did not want one and that he did not really want his client to know what was going on. The prosecutor also stated that the judge was informed by defense counsel that the defendant was not going to need an interpreter.[2]

The trial judge stated, "I find that [appellant] waived the right to an interpreter. He waived it verbally. He never objected to an interpreter not being present, and, I mean, that's what I recall of the case. He knew about the interpreter and he didn't want an interpreter and, therefore, we didn't give him an interpreter." When asked if that waiver was on the record or off the record, the trial judge responded, "The Court finds that the Court talked to [appellant] and [trial counsel]. I want to say it was up here on the bench where we were talking and he said he didn't want one, so it's a waiver."[3]

**B. Appeal**

---

[2] The prosecutor said that she informed the judge that some of her witnesses would need an interpreter and would be testifying in Spanish.

[3] The trial judge also stated that trial counsel did "a very good job under the facts of this case" and was "extraordinary" and referred to the fact that counsel "got a murder case where the only way that the lesser-included got into it was because of the confession." Appellant was charged with and convicted of murder, but the jury found in his favor on the issue of sudden passion, *see* TEX. PENAL CODE § 19.02(a), (d), and assessed a sentence of twenty years and a $10,000 fine. Appellant's motion for new trial included allegations of ineffective assistance of counsel. The ineffective-assistance allegations included counsel's failure to secure an interpreter but also extended to other matters. On appeal, appellant raised an ineffective-assistance claim regarding the failure to secure an interpreter, but the court of appeals's resolution of that claim is not before us.

On appeal, appellant contended, *inter alia res*, that the trial judge erred in failing to *sua sponte* appoint an interpreter. The court of appeals concluded that there was evidence that trial counsel informed the trial court and the prosecutor that appellant did not want an interpreter.[4] The court also concluded that, although the evidence was conflicting, the trial judge could have determined that appellant voluntarily and knowingly waived the appointment of an interpreter because appellant knew that he had the right to an interpreter, understood counsel's reasons for waiving that right, and agreed with him.[5] Finally, the court of appeals concluded that the trial judge recollected that appellant waived his right to an interpreter during an unrecorded bench conference.[6] Reviewing the evidence in the light most favorable to the trial judge's ruling, the court of appeals held that the record established that appellant "effectively made an express waiver of his right to a translator."[7]

## II. ANALYSIS

In *Marin v. State*, we held that our system contains three distinct categories of rules: (1) absolute requirements and prohibitions, (2) rights that must be implemented unless expressly waived, and (3) rights that are to be implemented upon request.[8] No one disputes that the right at issue here falls under the second category; that is, when the trial judge knows that the defendant cannot

---

[4] *Garcia v. State*, No. 13-11-00547-CR, 2013 Tex. App. LEXIS 2328, *12 (March 7, 2013) (not designated for publication).

[5] *Id.*

[6] *Id.*

[7] *Id.* at *13.

[8] 851 S.W.2d 275, 279 (Tex. Crim. App. 1993).

understand English, an interpreter must be appointed for the defendant unless the defendant waives such appointment.[9]  The question at issue here is what constitutes a "waiver" under *Marin*.  We explained in that case that, unlike the third category of rules, in which rights are forfeited through inaction alone, "waivable rights . . . do not vanish so easily."[10]  More specifically, we said, "Although a litigant might give them up and, indeed, has a right to do so, he is never deemed to have done so in fact unless he says so plainly, freely, intelligently, sometimes in writing and *always on the record*."[11]  We must explore in the present case what we meant in *Marin* when we said that the waiver of a waivable-only right must be "on the record."

For this statement, the *Marin* decision cited *Goffney v. State*.[12]  In *Goffney*, the defendant waived the right to counsel at trial and represented himself.[13]   We held that "the record must be sufficient for the reviewing court to make an assessment that the defendant was made aware of the dangers and disadvantages of the self-representation."[14]  In connection with that holding, we quoted an oft-quoted passage from *Carnley v. Cochran*[15]:

> Presuming waiver from a silent record is impermissible.  The record must show, *or there must be an allegation and evidence which must show*, that an accused was offered counsel but intelligently and understandingly rejected the offer.  Anything

---

[9]  *See Linton v. State*, 275 S.W.3d 493, 502 (Tex. Crim. App. 2009) (quoting *Garcia v. State*, 149 S.W.3d 135, 145 (Tex. Crim. App. 2004)).

[10]  *Marin*, 851 S.W.2d at 280.

[11]  *Id.* (emphasis added).

[12]  *Id.* (citing *Goffney v. State*, 843 S.W.2d 583 (Tex. Crim. App. 1992)).

[13]  *Goffney*, 843 S.W.2d at 584-85.

[14]  *Id.* at 585.

[15]  369 U.S. 506 (1962).

less is not waiver.[16]

The Supreme Court has quoted this exact passage in several of its landmark decisions, including *Miranda v. Arizona*,[17] *Boykin v. Alabama*,[18] and *Barker v. Wingo*.[19]  In *Barker*, the Court observed that it had previously defined waiver, in *Johnson v. Zerbst*,[20] as "an intentional relinquishment or abandonment of a known right or privilege."[21]  A few sentences later, the Court quoted the passage from *Carnley* regarding the need to show waiver on the record and then stated, "The Court has ruled similarly with respect to waiver of other rights designed to protect the accused. See, *e.g. Miranda v. Arizona* [and] *Boykin v. Alabama*."[22]

Our citation to *Goffney* in *Marin* indicates that we were not creating a state-law concept of waiver but were referring to the concept of waiver described by the United States Supreme Court in its constitutional jurisprudence.  That waiver jurisprudence includes the *Johnson* definition of waiver and the *Carnley* explanation of how waiver must be shown for the purpose of appellate review.  With respect to the present case, the key part of the *Carnley* passage is the phrase "or there must be an allegation and evidence which must show."  The Supreme Court was not content to simply say that the "record" must show a waiver.  It added an alternative way of showing the waiver through "an

---

[16]  *Goffney*, 843 S.W.2d at 585 (quoting *Carnley*, 369 U.S. at 516) (emphasis added).

[17]  384 U.S. 436, 475 (1966).

[18]  395 U.S. 238, 242 (1969).

[19]  407 U.S. 514, 526 (1972).

[20]  304 U.S. 458 (1938).

[21]  *Barker*, 407 U.S. at 525 (quoting *Johnson*, 304 U.S. at 464).

[22]  *Id.* at 526 (citations omitted).

allegation and evidence." The "allegation and evidence" phrase indicates that an appellate court can determine that a valid waiver has occurred even if the record fails to contain a waiver colloquy—so long as there is other evidence that a valid waiver actually occurred.

This conclusion is supported by subsequent caselaw from the Supreme Court and from us. *Miranda v. Arizona* requires a waiver of the right to remain silent and the right to counsel prior to custodial interrogation for statements to be admissible in the State's case-in-chief at trial.[23] In *North Carolina v. Butler*,[24] the Supreme Court addressed whether the waiver of those rights had to be explicit. The Supreme Court concluded that it did not: "An express written or oral statement of waiver of the right to remain silent or of the right to counsel is usually strong proof of the validity of that waiver, but is not inevitably either necessary or sufficient to establish waiver."[25] Although mere silence is not enough to establish a waiver of *Miranda* rights, "in at least some cases waiver can be clearly inferred from the actions and words of the person interrogated."[26] The Court further commented that "[w]e do not today even remotely question the holding in *Carnley v. Cochran,* which was specifically approved in the *Miranda* opinion."[27] The Court quoted the *Carnley* passage that we have quoted above and said, "This statement is consistent with our decision today, which is merely that a court *may* find an intelligent and understanding rejection of counsel in situations where

---

[23]   384 U.S. at 444-45, 470-71, 475.

[24]   441 U.S. 369 (1979).

[25]   *Id.* at 373.

[26]   *Id.*

[27]   *Id.* at 373 n.4 (citation omitted).

the defendant did not *expressly* state as much."[28]

*Boykin v. Alabama* requires that the record reflect a waiver of certain rights necessary to make a plea of guilty voluntary.[29] In *Davison v. State*,[30] we were called upon to determine whether the record was sufficient to demonstrate compliance with *Boykin*. The defendant entered an open plea of guilty to the offense of burglary of a building, ordinarily a state-jail felony, but he pled true to felony enhancement paragraphs that made him susceptible to punishment as a second-degree felon.[31] The record contained an explicit admonishment from the trial court on the range of punishment for a state-jail felony (180 days to two years) before the defendant pled guilty, but "[a]t no point in any of these proceedings did the trial court ever formally admonish the [defendant] that, as enhanced, the charges . . . exposed him to a range of punishment, as a second degree felon, of two to twenty years."[32] At the punishment phase, however, a probation officer testified that the defendant was subject to punishment for a second-degree felony, and, before closing arguments at punishment, the trial judge remarked that the enhancement provisions made the offense "punishable by two to twenty."[33]

We assumed, without deciding, that a silent record concerning the range of punishment would violate the *Boykin* requirement that the prerequisites of a voluntary guilty plea be spread on

---

[28] *Id.*

[29] 395 U.S. at 242-44.

[30] 405 S.W.3d 682 (Tex. Crim. App. 2013).

[31] *Id.* at 684-85.

[32] *Id.* at 685.

[33] *Id.*

the record.[34] But we held that the record was not totally silent because the trial judge explicitly referred to the second-degree-felony punishment range at the punishment phase of trial and the defendant did not exhibit any alarm at that time.[35] We concluded that it was legitimate to infer from the defendant's nonchalance that he was aware of that punishment range at the time he entered his plea.[36] We did not foreclose the possibility that the defendant could show in a post-conviction habeas corpus proceeding that he was in fact unaware of the applicable range of punishment at the time of his plea.[37]

In line with the holdings in *Butler* and *Davison*, we conclude that the record in the present case sufficiently reflects that appellant knowingly, intelligently, and voluntarily waived his right to an interpreter. The record here contains evidence that trial counsel told appellant that he had a right to an interpreter, that appellant agreed with counsel not to request an interpreter, and that appellant and counsel communicated their desire not to have an interpreter to the trial judge, albeit in an off-the-record bench conference. Under these facts the record on appeal sufficiently reflects that a valid waiver took place.[38]

---

[34] *Id.* at 692 ("even assuming that a silent record with respect to the appellant's awareness of the range of punishment is alone sufficient to trigger *Boykin*'s appellate presumptions"). *See also Boykin*, 395 U.S. at 238 ("requirement that the prosecution spread on the record the prerequisites of a valid waiver is no constitutional innovation").

[35] *Davison*, 405 S.W.3d at 688-89, 692.

[36] *Id.*

[37] *Id.* at 692 n.60.

[38] Citing three Supreme Court cases and several lower court cases, the dissent contends that the record shows appellant's waiver to be involuntary, because he was forced to choose between forgoing an interpreter and giving up his right to the effective assistance of counsel. We note that two of the Supreme Court decisions cited by the dissent are of questionable value, either because the cited opinion was a mere plurality or because the holding appears to have been overruled. *See Moltke v. Gillies*, 332 U.S. 708 (1948) (plurality op.); *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 5-6 (1992) (abrogating intentional-bypass rule articulated in *Fay v. Noia*, 372 U.S. 391 (1963)). The

We affirm the judgment of the court of appeals.

Delivered: April 9, 2014
Publish

---

remaining Supreme Court case involved remarkably different facts, with the defendant waiving his right to counsel out of fear that he might otherwise be lynched. *Moore v. Michigan*, 355 U.S. 155, 164-65 (1957). To the extent the lower court cases cited by the dissent address situations in which the defendant was required to sacrifice one constitutional right to secure another, they are distinguishable from the present case, in which the client merely faced the possibility that his attorney's performance would be diminished if the client insisted on an interpreter. We disagree with the dissent's suggestion that the record supports only the view that the client was led to believe that the use of an interpreter would completely deprive counsel of the ability to concentrate. From this record, the trial judge could have concluded that counsel conveyed to appellant merely that use of an interpreter would make counsel's job more difficult. That is not the same as rendering counsel constitutionally ineffective, and counsel's ability to *better* represent his client, due to the presence of fewer distractions, is a matter of legitimate strategy. Moreover, counsel's testimony that appellant responded, "Whatever you want," supports a conclusion that appellant was willing to defer to trial counsel's wishes regardless of trial counsel's reasons for not wanting an interpreter.