**Affirmed and Memorandum Opinion filed January 31, 2019.**



**In The**

# Fourteenth Court of Appeals

**NO. 14-17-00983-CR**

**ELIZABETH JIMENEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1560548**

## MEMORANDUM OPINION

We consider two issues in this appeal from a conviction for injury to a child: (1) whether appellant freely and voluntarily entered her plea of guilty, and (2) whether the State produced sufficient evidence to substantiate the plea of guilty. As for the first issue, we conclude that appellant has not rebutted the prima facie showing that her plea was free and voluntary. And as for the second issue, we conclude that the evidence is sufficient to substantiate the plea. We therefore affirm the trial court's judgment.

# BACKGROUND[1]

The offense in this case arises out of appellant's failure to timely seek medical attention for the complainant, her two-month-old daughter. Appellant knew that the complainant was unwell no later than 10:30 one evening, when the complainant began vomiting on appellant's boyfriend. Appellant did not express any alarm, however, which her boyfriend regarded as "out of the norm" because appellant "usually made a big deal out of nothing." Rather than take the complainant to the hospital, appellant went to a store to buy her boyfriend a new shirt.

The complainant woke up crying at around 4 o'clock the next morning. Appellant tried to breastfeed the complainant, but she was very fussy and refused to eat. Appellant tried to breastfeed again at 7 o'clock, but again the complainant refused. At 8 o'clock, appellant gave the complainant a fever reducer after detecting a low-grade fever. At noon, appellant tried to breastfeed for the third time, but once more the complainant refused.

At around 3 o'clock that afternoon, appellant took the complainant to a charitable ministry that provides counseling and maternal assistance. When a counselor there saw that the complainant was pale and almost lifeless, the counselor threatened to call CPS unless appellant sought immediate medical attention. Appellant stormed out of the office, infuriated by the counselor's threat.

The counselor called 911, and a police officer intercepted appellant as she was driving away. With the assistance of EMS, the complainant was then transported to

---

[1] Most of these background facts are derived from the presentence investigation report, which summarized many different sources, including the police reports. There are conflicting versions of events in those underlying sources, but in accordance with our standard of review, we present these background facts in the light most favorable to the prosecution.

the hospital. Doctors there found no visible injuries to the complainant, but scans revealed that she had a skull fracture and subdural hemorrhages.

Appellant appeared "emotionless" and "very distant" when she was subsequently interviewed by police. Appellant could not explain how the complainant was injured, but she theorized that, when no one was looking, the complainant may have been dropped on her head by one of appellant's younger siblings (ages five to seven).

Appellant's theory was implausible to doctors, who believed that the complainant's injury was too severe to have been caused by a minor fall. They opined that the complainant's complex skull fracture was indicative of one or more very hard impacts to the head, which they expected would result in permanent disabilities.

Appellant was originally charged with two separate offenses. The first was injury to a child by commission (i.e., by causing the complainant's skull fracture), and the second was injury to a child by omission (i.e., by failing to seek medical care). The prosecution agreed to drop the first charge when appellant agreed to enter an open plea of guilty to the second charge.

The trial court deferred a finding of guilt at the end of the plea hearing and reset the case for sentencing at a later date. In advance of the sentencing hearing, the trial court received a presentence investigation report, which indicated that the complainant was in foster care, but suffering from a host of problems. She has seizures, the report revealed. Also, she has to be fed through a tube because she cannot eat or swallow. She has breathing difficulties. She cannot see well. And she cannot walk or hold up her own head.

3

On the day of the sentencing hearing, the focus was largely on appellant's responsibility. The prosecutor acknowledged that, out of an agreement with the defense, she would not pursue the commission charge, but the prosecutor emphasized that "it has always been the State's contention that [appellant] was the actor." In support of that contention, the prosecutor introduced into evidence a text message from appellant to her boyfriend, which was sent at some undetermined time before the complainant's hospitalization. The text message read: "I'm frustrated. Little one woke up, tried feeding her but was refusing so I said fuck it gave her to my mom and walked away before I thought of doing something I would regret for the rest of my life."

Appellant testified that she did not inflict the head injury to the complainant, but she admitted that she was guilty of "not taking [the complainant] to the hospital quick enough and not providing the care to her that [she] should have."

The trial court found appellant guilty and sentenced her to twenty-five years' imprisonment. Appellant did not move for a new trial or otherwise complain to the trial court that she had not understood the consequences of her plea.

## VOLUNTARINESS OF GUILTY PLEA

Appellant challenges her guilty plea on constitutional and statutory grounds, both of which require a showing that the plea was free and voluntary. *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969) ("It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary."); Tex. Code Crim. Proc. art. 23.13(b) ("No plea of guilty or plea of nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary."). Her argument is the same as to both grounds. She contends that her

4

plea was not free and voluntary because the record does not show that she understood the elements of the offense.

The State contends that appellant failed to preserve this issue because she did not move to withdraw her plea in the trial court. But this issue is not subject to procedural default. *See Davison v. State*, 405 S.W.3d 682, 690 (Tex. Crim. App. 2013) ("*Boykin* operates like a rule of default: Unless the appellate record discloses that a defendant entered his guilty plea 'voluntarily and understandingly[,]' a reviewing court must presume that he did *not*, and rule accordingly. For a reviewing court nevertheless to require an appellant to preserve *Boykin* error at the trial court level would turn this constitutional rule of default on its head, reversing the presumption.") (citing *Marin v. State*, 851 S.W.2d 275, 279–80 (Tex. Crim. App. 1993)). We therefore address the merits.

We examine the record as a whole when considering the voluntariness of a guilty plea. *See Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998) (per curiam). If the record establishes that the defendant was duly admonished, then a prima facie showing arises that the guilty plea was entered knowingly and voluntarily. *Id.* The defendant may still raise a claim that her plea was not voluntary, but the burden shifts to her to demonstrate that she did not fully understand the consequences of the plea such that she suffered harm. *Id.*

We begin by considering whether appellant was duly admonished. We note that during the plea hearing, there was no formal reading of the indictment, nor did the trial court specifically admonish appellant as to the elements of the offense. However, the elements were set forth in a written form that appellant signed before the plea hearing. The form, entitled "Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession," stated as follows:

5

In open court and prior to entering my plea, I waive the right of trial by jury. I also waive the appearance, confrontation, and cross-examination of witnesses, and my right against self-incrimination. The charges against me allege that in Harris County, Texas, ELIZABETH JIMENEZ, hereafter styled the Defendant, heretofore on or about April 20, 2016, did then and there unlawfully, while having statutory duty to act pursuant to Section 151.001 of the Texas Family Code, intentionally and knowingly by omission cause serious bodily injury to N.J., hereafter styled the Complainant, a child younger than fifteen years of age, by FAILING TO SEEK MEDICAL CARE AND TREATMENT.

The form also contained the following acknowledgment: "I understand the above allegations and I confess that they are true and that the facts alleged above were committed on April 20, 2016."

The trial court referred to this form during the plea hearing. Before admitting the form into evidence, the trial court asked appellant whether she had signed it, whether her attorney had explained it to her before she had signed it, and whether she had understood it. Appellant answered affirmatively to each of these questions. Based on these answers and on the form itself, we conclude that appellant was duly admonished, and that the record gives rise to a prima facie showing that her guilty plea was entered knowingly and voluntarily. *See Houston v. State*, 201 S.W.3d 212, 219 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (concluding that there was a prima facie case where the charge was disclosed in a "Waiver of Constitutional Rights, Agreement to Stipulate, and Judicial Confession" and where the trial court properly admonished the defendant before entering the plea).

The burden accordingly shifted to appellant to show that she did not fully understand the consequences of the plea such that she suffered harm. *See Martinez*, 981 S.W.2d at 197.

Appellant argues that she did not understand her plea because "at the plea hearing, no one broke down the elements of the offense and made sure [she]

understood and was admitting each one." She focuses on the *mens rea* element in particular. While she admits that she knowingly failed to seek medical care for the complainant, appellant complains that no one explained to her that she was pleading guilty to knowingly causing injury to the complainant. But the plea papers show otherwise. Appellant signed a form admitting that she "intentionally and knowingly by omission cause[d] serious bodily injury to N.J., hereafter styled the Complainant, a child younger than fifteen years of age, by FAILING TO SEEK MEDICAL CARE AND TREATMENT."

Appellant refers in her brief to evidence that she steadfastly denied having caused the complainant's skull fracture. But the offense to which she pleaded guilty was not for causing the skull fracture itself. Rather, the offense was for causing a nonspecific injury by failing to seek treatment for the complainant. Evidence from appellant's own expert witness supported a finding that appellant's delay in seeking treatment caused an injury to the complainant in addition to her initial skull fracture. The expert opined: "It also appears that there was a significant delay in seeking care for [the complainant], and the delay likely contributed to the severity of [the complainant's] neurologic deficits."

Nevertheless, appellant argues that additional clarification was required because she "had trouble understanding even simple questions throughout the plea hearing." In support of this argument, she refers to three particular incidents.

First, she notes that when the trial court asked if she had ever been treated for mental illness, she answered negatively, even though the presentence investigation report showed that she had previously been hospitalized for depression. This evidence does not show that appellant was incapable of understanding her guilty plea or the plain language of the charge against her.

Second, she notes that she had no response when the trial court asked if she wanted "to give up [her] right to a jury trial and continue with [her] plea to [the Judge] for a presentence investigation." After she failed to respond, her defense counsel clarified, "Do you want to go to the Judge for sentencing and not go to a jury? That's what we talked about. Do you want the Judge to be the one to assess the sentence?" Appellant then answered affirmatively. Again, this does not demonstrate that appellant was incapable of understanding her guilty plea. At most, it shows that appellant was uncertain about the trial court's reference to "a presentence investigation."

Third, she notes that she gave conflicting answers when she was asked whether she had been promised "anything" in exchange for her plea. She initially answered that question in the negative, but when the trial court later asked her whether she had specifically been promised "deferred adjudication" (as opposed to "anything" more generally), she answered in the affirmative. Defense counsel then clarified that he had discussed the range of punishment with appellant, and that he would be asking the court for deferred adjudication, while the prosecutor would be asking the court for prison time. Appellant agreed with that representation, and answered that no one had promised her deferred adjudication. Once again, this exchange does not support a finding that appellant was incapable of understanding that she was pleading guilty to having caused injury to the complainant by failing to seek medical care. *See Saldivar v. State*, 542 S.W.3d 43, 46–48 (Tex. App.— Houston [14th Dist.] 2017, pet. ref'd) (overruling a claim that a guilty plea was involuntary because of "persistent confusion" where the record showed that all of the confusing points were eventually resolved and clarified).

We conclude that appellant has failed to rebut the prima facie showing that she entered her guilty plea freely and voluntarily.

8

# SUFFICIENCY OF THE EVIDENCE

Before a trial court may render a judgment of conviction in a felony case where the defendant has pleaded guilty, the prosecution must produce evidence of the defendant's guilt that is "in addition to, and independent of, the plea itself." *See Menefee v. State*, 287 S.W.3d 9, 14 (Tex. Crim. App. 2009); *see also* Tex. Code Crim. Proc. art. 1.15 ("In no event shall a person charged be convicted upon his plea without sufficient evidence to support the same."). The evidence is sufficient to substantiate the plea so long as it "covers all of the elements of the charged offense." *See Menefee*, 287 S.W.3d at 13–14. As with other types of sufficiency reviews, we examine the evidence in the light most favorable to the prosecution. *See Cardenas v. State*, 403 S.W.3d 377, 380–81 (Tex. App.—Houston [1st Dist.] 2013, *aff'd*, 423 S.W.3d 396 (Tex. Crim. App. 2014).

When, as here, the offense of injury to a child is alleged as a first-degree felony, it has the following essential elements: the defendant intentionally or knowingly by omission caused serious bodily injury to a child, the child was fourteen years of age or younger, and the defendant had a legal or statutory duty to act. *See* Tex. Penal Code § 22.04(a)(1), (b)(1), (c)(1), (e).

Here, the prosecution produced evidence in many forms, including a presentence investigation report, which stated that appellant was the mother of the complainant, who was only two months old, meaning that appellant had a statutory duty to provide the complainant with medical care. *See* Tex. Fam. Code § 151.001. The report also revealed that appellant failed to act despite knowing that the complainant was unwell:

> The defendant told [a CPS caseworker] she had noticed the complainant was pale early morning around 7:00 am. She also said the complainant had been running a fever all day and was given a fever reducer since she believed her two month old baby (the complainant) was teething.

9

> The statement provided to [the CPS caseworker] indicated defendant Jimenez knew the complainant was sick all day and did not provide her with any medical attention until the police arrived later that day.

Furthermore, the report stated that appellant became infuriated when a counselor threatened to call the authorities if appellant did not seek immediate medical attention for the complainant. The trial court could have reasonably inferred from this evidence that appellant knew that she was causing serious bodily injury to the complainant by not taking the complainant to the hospital.

Appellant responds that the evidence is insufficient to support the *mens rea* element because there is no evidence that she was aware of the complainant's skull fracture, and thus, she could not have known that a delay in treatment would have caused the complainant any injury. But there was ample evidence that appellant knew that the complainant needed medical attention for other reasons: the complainant had vomited the night before, she woke up very fussy, she refused to be breastfed, and she turned pale as early as 7 o'clock in the morning. A reasonable factfinder could have concluded that appellant knew that her failure to seek medical attention under these circumstances would result in serious bodily injury.

Appellant also contends that the evidence is insufficient because two experts opined that appellant's failure to act may have been the result of "unintentional negligence" or "ignorance." This point merely raises a conflict in the evidence, which, under our standard of review, we presume was resolved in favor of the prosecution. *See Parks v. State*, 746 S.W.2d 738, 741 (Tex. Crim. App. 1987) (providing that the factfinder may choose to disregard expert testimony).

Appellant finally points to evidence that she actually tried to get emergency help sooner, but she was told by her boyfriend and her mother that a trip to the hospital was unnecessary, and she was unable to find transportation in any event.

This point raises another conflict in the evidence, which we again presume was resolved in favor of the prosecution.

We conclude that the evidence is sufficient to substantiate appellant's plea of guilty.

## CONCLUSION

The trial court's judgment is affirmed.


/s/     Tracy Christopher
        Justice


Panel consists of Justices Christopher, Spain, and Hassan.
Do Not Publish — Tex. R. App. P. 47.2(b).