

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0635-19

### JAMES RAY HAGGARD, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE NINTH COURT OF APPEALS
### LIBERTY COUNTY

YEARY, J., filed a concurring opinion.

### CONCURRING OPINION

We have observed many times that this Court's discretionary review capacity is typically limited to reviewing "decisions" of the courts of appeals, subject to very limited exceptions. *E.g.*, *Davison v. State*, 405 S.W.3d 682, 691 (Tex. Crim. App. 2013). In the instant case, the court of appeals "assumed without deciding" that the Confrontation Clause was violated in this case, without engaging in any analysis of that question. *Haggard v. State*, Nos. 09-17-00319-DR & 09-17-00320-CR, 2019 WL 2273869, at *7 (Tex. App.— Beaumont May 29, 2019) (mem. op., not designated for publication). It then determined

that any error that may have occurred was harmless. *Id*. It rendered no "decision" at all regarding whether the Confrontation Clause was violated.

The Court today reaches and extensively discusses the merits of the Confrontation Clause issue, although the court of appeals never decided that question. (That may explain why the Court's opinion does not even mention the court of appeals' opinion until it comes to address that court's harm analysis; and why the Court never seems to articulate a definite holding with respect to Confrontation Clause error.) The Court never explains why it is appropriate to do so. And I do not agree that the Court's opinion should address the merits of whether Confrontation Clause error occurred.

I concur in the Court's judgment to send the case back for further proceedings with respect to the court of appeals' harm analysis. Should the court of appeals determine on remand that error, if any, was not harmless after all, it will be obliged to address the merits of the Confrontation Clause issue at that time. We can then review that determination, if that seems appropriate, in due course.

Having said that, I am compelled to make one observation about the Court's competing opinions in this case touching on whether Confrontation Clause error occurred, superfluous though I regard my observation to be. The dissenting opinion takes the position that two-way video testimony is in all things consistent with core Confrontation Clause principles requiring the appearance of the accuser face-to-face; that literal, physical presence in the courtroom is not an indispensable feature of true confrontation. *See* Dissenting Opinion, at 8 ("Two-way video allows this face-to-face meeting and, with

today's technology, usually allows each party to see and hear the other better than if they were across the courtroom from each other."). But I agree with the Court that binding United States Supreme Court precedent seems squarely to the contrary. Majority Opinion at 8–10 & 12.

I would only add to this debate that the founders of our country could not have thought that some then-undreamed-of technological advancement, such as testimony by two-way video, could take the place of literal face-to-face confrontation, no matter how faithfully it might mimic the perceived truth-finding advantages of physical presence in the courtroom. Such technology did not exist when the Sixth Amendment was adopted, and thus it could not have resided within the people's common understanding of the language: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST., amend. VI. Literal, physical, face-to-face confrontation, live in the courtroom, is the procedure the Sixth Amendment mandates— not some other procedure that might be thought by us today to secure the objectives of confrontation at least as efficaciously, if not more so. *See Crawford v. Washington*, 541 U.S. 36, 61 (2004) ("To be sure, the [Confrontation] Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner[.] * * * The Clause thus reflects a judgment . . . about how reliability can best be determined."). We are not at liberty to accept some alternative procedure just because, in our belated judgment, we think it might work as well as, or better than, the constitutionally required one.

FILED:          December 9, 2020
PUBLISH