# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-19-00280-CR
NO. 03-19-00281-CR

**Melvin Vega Menjivar, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE 403RD DISTRICT COURT OF TRAVIS COUNTY
NOS. D-1-DC-18-300708 & D-1-DC-18-300780
THE HONORABLE BRENDA KENNEDY, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Melvin Vega Menjivar was convicted of indecency with a child by sexual contact and possession with intent to promote child pornography and was sentenced to twenty years' imprisonment for each offense with the sentences running concurrently. *See* Tex. Penal Code §§ 12.33, 21.11, 43.26. In two issues on appeal, Menjivar argues that the trial court erred by accepting his guilty pleas without properly admonishing him and that the trial court violated his due-process rights by accepting his guilty pleas when his pleas were involuntarily given. We will affirm the trial court's judgments of conviction.

## BACKGROUND

Menjivar was charged with the following three offenses: indecency with a child by sexual contact, possession with intent to promote child pornography, and possession of child

pornography. *See* Tex. Penal Code §§ 21.11, 43.26. During a pretrial hearing, the State explained that if Menjivar agreed to plead guilty, it would dismiss the possession charge and agree to recommend that he be sentenced to seven years' imprisonment in the remaining two offenses but later clarified that the offer was for eight years' imprisonment. The State also related that it would ask that the punishments for the two remaining offenses be stacked if the cases went to trial and that it would allow Menjivar time to consider the offer, but the State also communicated that if Menjivar did not accept the offer soon, it would proceed to trial and would make no more offers.

A few weeks later, during another pretrial hearing, the State explained that its original offer would expire that day and that if Menjivar did not accept the offer, it would proceed to trial on all three charges, amend the possession-with-intent-to-promote charge to include all the images that the State uncovered in its investigation, and move to stack the sentences for all of the charges. At the hearing, the trial court explained that possession of child pornography with intent to promote and indecency with a child by sexual contact are second-degree felonies and set out the applicable punishment range of between two- and twenty-years' confinement. *See id.* § 12.33. The following day Menjivar informed the trial court that he had rejected the eight-year offer. At that hearing, the State explained that it was making a new plea offer under which it would dismiss the possession charge and recommend that Menjivar be sentenced to fifteen years' imprisonment if he agreed to plead guilty to the indecency and the possession-with-intent charges. After acknowledging that he understood the terms of the new plea offer, Menjivar pleaded not guilty to the two charges. As in the previous hearing, the trial court specified that indecency with a child by sexual contact and possession of child

pornography with intent to promote are second-degree felonies and informed Menjivar of the punishment range for second-degree felonies. *See id.*

At the beginning of the plea hearing approximately three weeks later, Menjivar pleaded guilty to both charges. The trial court asked whether there was a plea-bargain agreement, and the State explained that it understood that Menjivar was entering an open plea. Menjivar did not contest the State's assertion that there was no plea-bargain agreement. During the hearing, the trial court confirmed that Menjivar signed a document entitled "Plea of Guilty, Admonishments, Voluntary Statements, Waivers, Stipulation & Judicial Confession" in each case. Those documents specified that Menjivar was pleading guilty to both offenses, that both offenses were second-degree felonies with punishment ranges of two to twenty years' imprisonment, and that he agreed to voluntarily waive several rights. In addition, the documents contained judicial confessions in which Menjivar admitted to committing the charged offenses. Those documents were admitted as an exhibit during the hearing. At the end of the hearing, the trial court accepted Menjivar's guilty pleas and directed the parties to agree to a date for a sentencing hearing.

During the sentencing hearing held two weeks later, the State called as witnesses the child victim, the victim's mother, and several police officers. In her testimony, the victim's mother explained that she had been dating Menjivar at the time of the offenses, that he lived with her and the victim, and that she found a video on his phone allegedly showing him placing his penis between the victim's feet and using the victim's feet for sexual gratification. One of the investigating officers testified that Menjivar admitted that he made two videos with his cell phone showing him "masturbating . . . with the aid of [the victim]'s feet." In addition, the police officer explained that a forensic examination of Menjivar's cell phone revealed pornographic

3

images and videos of prepubescent girls engaged in sexual activity with adult men and that Menjivar admitted that he knew that the girls in the videos were minors. Videos taken from Menjivar's cell phone were admitted into evidence during the hearing. In its closing argument, the State requested that Menjivar be sentenced to fifteen years' imprisonment and asserted that it would be dismissing the charge of possession of child pornography. In his closing argument, Menjivar twice acknowledged that the punishment range is "2 to 20" years and suggested that he should only be sentenced to five years' imprisonment. After considering the evidence presented during the hearing, the trial court sentenced Menjivar to twenty years' imprisonment for both charges, and neither party objected to the assessed punishments.

In another hearing the following day, the trial court discussed Menjivar's obligation to register as a sex offender following his release from prison, and neither party made any objection to the sentences that the trial court previously imposed. Menjivar did not file a motion for new trial or otherwise challenge his convictions or punishments. The trial court issued certifications regarding Menjivar's appellate rights stating that these cases are not plea-bargain cases and that he has the right to appeal. Consistent with those certifications, Menjivar appealed the trial court's judgments of conviction.

After Menjivar appealed his convictions, this Court abated these cases. *See Menjivar v. State*, Nos. 03-19-00280—00281-CR, 2020 WL 3118698, at \*1-2 (Tex. App.—Austin June 12, 2020, order) (mem. op., not designated for publication). In our order, this Court explained that our review of the clerk's records in these cases revealed a document potentially setting out the terms of a plea-bargain agreement that was signed by the trial court and the parties a few days before Menjivar entered his guilty pleas. *Id.* at \*1. The document states that Menjivar agreed to accept the State's offer in which he would plead guilty to the charges of

4

indecency with a child by sexual contact and possession with intent to promote child pornography in exchange for the State's recommending that his sentence not exceed fifteen years in both counts, asking that his punishments for both offenses run concurrently, and agreeing to dismiss the charge of possession of child pornography. In light of this document, this Court asked the trial court to verify whether its certifications that these cases are not plea-bargain cases were accurate and, if needed, to issue findings of fact and conclusions of law explaining whether there was a plea-bargain agreement in these cases. *Id.* Subsequently, the trial court issued new certifications again explaining that these cases are not plea-bargain cases and that Menjivar has the right to appeal and also explaining that Menjivar entered open pleas in both cases.

### DISCUSSION

**Admonishments under Article 26.13**

In his first issue on appeal, Menjivar argues that the trial court erred by failing to comply with the requirements of article 26.13 of the Code of Criminal Procedure when accepting his guilty pleas. *See* Tex. Code Crim. Proc. art. 26.13. That provision reads, in relevant part, as follows:

> (a) Prior to accepting a plea of guilty or a plea of nolo contendere, the court shall admonish the defendant of:
>
> . . .
>
> > (2) the fact that the recommendation of the prosecuting attorney as to punishment is not binding on the court. Provided that the court shall inquire as to the existence of a plea bargain agreement between the state and the defendant and, if an agreement exists, the court shall inform the defendant whether it will follow or reject the agreement in open court and before any finding on the plea. Should the court reject the agreement, the defendant shall be permitted to withdraw the defendant's plea of guilty or nolo contendere[.]

5

*See id.*

After referencing this provision, Menjivar notes that the trial court did not explain before accepting his guilty pleas and finding him guilty whether it was going to follow or reject the terms of the alleged plea-bargain agreement referenced above and that the trial court did not allow him the opportunity to withdraw his guilty pleas when it ultimately rejected the recommended sentences in the plea agreement by sentencing him to twenty years' imprisonment for each offense. Further, Menjivar contends that the State's actions during the plea and sentencing hearings were consistent with the terms of that agreement because the State agreed to dismiss one of the charges and agreed not to request that his sentences be stacked and because it recommended that he be sentenced to fifteen years' imprisonment. Finally, Menjivar urges that the trial court's failure to properly admonish him and allow him to withdraw his guilty plea resulted in reversible harm because the trial court imposed sentences that exceeded the ones that he agreed to in the plea agreement.[1]

---

[1] In its brief, the State argues that Menjivar failed to preserve his first issue on appeal because he made no objection regarding article 26.13 and because he did not seek to withdraw his plea when the trial court assessed his punishment or file a motion for new trial objecting to his punishment. *See* Tex. R. App. P. 33.1; *Joyner v. State*, 548 S.W.3d 731, 734 (Tex. App.— Houston [1st Dist.] 2018, pet. ref'd) (addressing preservation of claim regarding breach of plea agreement). As support for this argument, the State primarily relies on two opinions from the Court of Criminal Appeals, but neither of those cases involved the type of alleged error regarding article 26.13 at issue here. *See Moore v. State*, 295 S.W.3d 329, 333 (Tex. Crim. App. 2009) (explaining that defendant's complaint did not "involve the admonishment requirements" from article 26.13 and instead involved "the trial court's improper intrusion into the plea-bargaining process"); *Mendez v. State*, 138 S.W.3d 334, 336-37 (Tex. Crim. App. 2004) (addressing issue regarding whether trial court "should have *sua sponte* withdrawn [defendant's] guilty plea after" parties introduced evidence that defendant asserted "raised an issue as to his guilt"). Additionally, the State contends that individuals have only been allowed to present a claim regarding article 26.13 for the first time on appeal when the trial court provided "incomplete admonishments, gave inaccurate admonishments, or failed to give admonishments altogether" and asserts that those circumstances are not present here. *See, e.g.*, *Davison v. State*, 405 S.W.3d 682, 685 (Tex. Crim. App. 2013) (failure to formally admonish defendant that punishment range was

Although Menjivar points to the terms of a signed document entitled "Jury Waiver and Plea Agreement" in the clerk's records as support for his claims that there was a plea agreement and that the trial court failed to comply with the requirements of article 26.13 pertaining to plea agreements, the trial court certified that there was no plea-bargain agreement. Perhaps more importantly, the trial court recertified that there was no plea agreement after this Court abated these cases and pointed out that there was a possibility that the trial court's first certifications may have been incorrect. *Cf. Seaman v. State*, No. 09-95-00267-CR, 1996 WL 53866, at *2 (Tex. App.—Beaumont Feb. 7, 1996, no pet.) (op., not designated for publication) (explaining that "[w]here there is conflicting evidence on the issue of the existence of a plea bargain agreement . . . , the appellate court will defer to the findings made by the trial court"); *Dupree v. State*, No. 05-94-01104-CR, 1995 WL 785156, at *2 (Tex. App.—Dallas Dec. 21, 1995, no pet.) (op., not designated for publication) (noting that issue of "[w]hether appellant and the State reached a plea bargain agreement was an issue of fact to be decided by the trial court" and that "[t]he trial court had the right to accept the prosecutor's version of the plea bargain attempt").

Moreover, those certifications are consistent with the remainder of the record. *See Boulard v. State*, No. 09-00-00031-CR, 2000 WL 1643862, at *1 (Tex. App.—Beaumont Nov. 1, 2000, no pet.) (op., not designated for publication) (stating that "[a]bsent a clear indication of the existence of a plea bargain agreement as to punishment, we shall assume the plea was non-negotiated"). During the hearings held before Menjivar entered his pleas, he

enhanced due to past convictions); *Bessey v. State*, 239 S.W.3d 809, 811 (Tex. Crim. App. 2007) (failure to give admonishment regarding sex-offender-registration requirement); *VanNortick v. State*, 227 S.W.3d 706, 708 (Tex. Crim. App. 2007) (failure to inform defendant about immigration consequences). Given our ultimate resolution of Menjivar's first issue, we will assume for the sake of argument that he has preserved this complaint for appellate review.

rejected the plea offers by the State. Moreover, the signed plea paperwork relied on during the plea hearing did not set out the terms of any plea-bargain agreement. Further, during the plea hearing, the State asserted that there was no plea agreement and that Menjivar was entering open pleas of guilty, and he did not challenge those assertions or otherwise object. Similarly, Menjivar repeatedly explained to the trial court in his closing arguments during the sentencing hearing that the trial court had the option of imposing sentences that fall within the full punishment range for second-degree felonies. *See* Tex. Penal Code § 12.33. When the trial court assessed Menjivar's punishments, he made no objection asserting that the punishments exceeded the terms of a plea agreement. Similarly, during the hearing on the day after Menjivar's punishments were imposed, he did not contest his punishments. And Menjivar did not file a motion to withdraw his guilty pleas or a motion for new trial challenging the propriety of his punishments.

Accordingly, on this record, we must conclude that there was no plea-bargain agreement in this case. *Cf. Ortiz v. State*, 933 S.W.2d 102, 104 (Tex. Crim. App. 1996) (concluding "[b]ased on the record of the initial plea hearing" that trial court "never accepted the plea agreement"); *Dorsey v. State*, 55 S.W.3d 227, 232-33 (Tex. App.—Corpus Christi 2001, no pet.) (determining that "agreement memo" that was signed by parties was not plea-bargain agreement, in part, because it was "not introduced before the court at the plea hearing," because plea paperwork that was actually filed with trial court did not have "an agreed recommendation for sentencing," because defendant "entered an open plea of guilty," and because "appellant's first trial counsel represented that there was no plea bargain"); *In re R.O.*, No. 04-95-00596-CV, 1996 WL 525574, at *1 (Tex. App.—San Antonio Sept. 18, 1996, no writ) (op., not designated for publication) (deciding that there was no plea-bargain agreement where no plea agreement

8

was "mentioned or discussed" during plea hearing, where "the State never mentioned the existence of a plea bargain agreement" when asked for its punishment recommendation, and where "the transcript does not contain any record of a plea bargain agreement").

The Code of Criminal Procedure only obligates a trial court to inform a defendant whether it will follow or reject the terms of a plea agreement and to allow the defendant to withdraw his guilty plea when the terms of a plea agreement are rejected "if an agreement exists." Tex. Code Crim. Proc. art. 26.13(a)(2). As set out above, the record in this case demonstrates that there was no plea bargain and that the trial court was informed that there was no plea agreement. Once the "trial court inquired into the existence of a plea agreement and was informed that none existed," it "was not required to give the admonishments in Article 26.13(a)(2)." *Hargrave v. State*, No. 06-03-00090-CR, 2004 WL 1554839, at *2 n.4 (Tex. App.—Texarkana July 13, 2004, no pet.) (op., not designated for publication).[2] Therefore, we conclude that the trial court did not err by failing to provide the admonishments pertaining to plea-bargain agreements or by failing to inform Menjivar whether it would accept the terms of a plea agreement and afford him an opportunity to withdraw his plea if it rejected those terms.

For these reasons, we overrule Menjivar's first issue on appeal.

---

[2] We note that the plea paperwork that Menjivar, his attorney, the State, and the trial court signed and that the trial court discussed with him during the plea hearing included various admonishments under article 26.13. *See* Tex. Code Crim. Proc. art. 26.13(d) (specifying that admonishments may be made "orally or in writing" and that if admonishments are given in writing, trial court "must receive a statement signed by the defendant and the defendant's attorney that he understands the admonitions and is aware of the consequences of his plea"); *see also Medina v. State*, 985 S.W.2d 192, 194 (Tex. App.—San Antonio 1998, no pet.) (concluding that trial court received written admonishment where defendant and trial court signed document and where clerk filed document).

**Voluntariness of Guilty Pleas**

In his second issue on appeal, Menjivar contends that his pleas were "rendered involuntary under the Due Process Clause . . . when the trial court failed to properly admonish him, rejected the terms of the negotiated plea agreement, and did not allow him to withdraw his plea[s]." *See Holland v. State*, 112 S.W.3d 251, 255 (Tex. App.—Austin 2003, no pet.). Further, Menjivar asserts that the trial court's failure to allow him to withdraw his pleas violated his rights to due process and constituted an abuse of discretion because he entered his guilty pleas believing that "his sentence was capped at 15 years." Relatedly, Menjivar argues that the record in this case did not establish that his guilty pleas were "understandingly and voluntarily" made because the record does not show that he was aware of the rights that he was waiving. *See Boykin v. Alabama*, 395 U.S. 238, 244 (1969). For these reasons, Menjivar urges that the trial court's judgments of conviction should be reversed and that the causes should be remanded for a new trial.

As an initial matter, we note as set out in the discussion of the previous issue that there was no plea-bargain agreement in these cases and that, therefore, the trial court was not obligated under article 26.13 to inform him whether it was rejecting the terms of a plea bargain or afford him an opportunity to withdraw his guilty pleas. *See* Tex. Code Crim. Proc. art. 26.13. Accordingly, we fail to see how Menjivar's pleas could have been rendered involuntary or his due process rights could have been affected by the trial court's failure to provide admonishments that were not required under article 26.13. *Cf. Davison v. State*, 405 S.W.3d 682, 687 (Tex. Crim. App. 2013) (noting that "any claim that the trial court failed to follow the mandate of [article 26.13] is separate from the claim that the guilty plea was accepted in violation of due process").

10

To the extent that Menjivar is arguing that there was error present in this case like that present in *Boykin v. Alabama* in which the Supreme Court determined that a defendant's waiver of his constitutional rights was not made knowingly and voluntarily, the record in this case does not support that conclusion. In *Boykin*, the defendant pleaded guilty to all the charges against him, and the trial court "asked no questions . . . concerning his plea." 395 U.S. at 239. On appeal, the Supreme Court determined that it was error to accept the defendant's "guilty plea without an affirmative showing that it was intelligent and voluntary." *Id.* at 242. In reaching its conclusion, the Supreme Court also explained that the following constitutional rights are waived when a plea of guilty is entered: the right against self-incrimination, the right to a jury trial, and the right to confront one's accusers. *Id.* at 243. Further, the Supreme Court reasoned that courts "cannot presume a waiver of these three important . . . rights from a silent record." *Id.*

In this case, the record is not silent regarding whether Menjivar knowingly and voluntarily waived his rights. *See Davison*, 405 S.W.3d at 686, 687 (explaining that as long as record "affirmatively discloses that the defendant's guilty plea was adequately informed, due process is satisfied" and noting that for "guilty plea to be constitutionally valid . . . , the defendant must have an actual awareness of the nature and gravity of the charges against him and of the constitutional rights and privileges that he necessarily relinquishes"). As discussed previously, the plea paperwork admitted and discussed at the plea hearing set out the offenses for which he was charged and their applicable punishment ranges, stated that he was pleading guilty to those offenses, contained no plea-bargain terms, set out the admonishments under article 26.13, and specified that Menjivar was "freely, knowingly, and voluntarily" waiving, among others, the right to a jury trial, the right to confront and cross-examine the witnesses against him, the right to remain silent, and the right against self-incrimination. That plea paperwork was signed

11

by the defendant, his attorney, the State, and the trial court. Moreover, during various pre-trial hearings, the trial court set out the charges against Menjivar and the accompanying punishment ranges, and he responded that he understood the charges and potential punishment options for those offenses.

During the plea hearing, the State informed the trial court that there was no plea-bargain agreement and that Menjivar was entering open guilty pleas, and he did not object to the State's assertions. Additionally, Menjivar stated during the plea hearing that he went over the plea paperwork with his attorney, that he understood the consequences of entering guilty pleas, that he signed and initialed the plea paperwork knowingly and voluntarily, and that he was pleading guilty to both offenses because he was guilty and for no other reason. Moreover, at the sentencing hearing, Menjivar repeatedly informed the trial court that the full punishment range for second-degree felonies was available for both offenses. And Menjivar did not protest the imposition of his sentences at the punishment hearing, at the hearing held on the following day, or in a motion for new trial.

Accordingly, "the record is not altogether silent with respect to whether [Menjivar] understood the consequences of his plea" and shows that he was aware of his constitutional rights and knowingly and voluntarily pleaded guilty to the charged offenses. *See id.* at 692 (concluding that there was no *Boykin* error based on record and noting that defendant did not protest "when the greater punishment range was mentioned during the punishment proceedings"); *Guzman v. State*, No. 03-02-00040-CR, 2002 WL 1988376, at *1-2 (Tex. App.—Austin Aug. 30, 2002, no pet.) (op., not designated for publication) (distinguishing *Boykin* and concluding that record "affirmatively reflects that appellant was aware of all of his constitutional rights and entered his guilty plea voluntarily and understandingly").

For these reasons, we overrule Menjivar's second issue on appeal.

## CONCLUSION

Having overruled both of Menjivar's issues on appeal, we affirm the trial court's judgments of conviction.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Kelly

Affirmed

Filed:   September 2, 2020

Do Not Publish