**Affirmed and Memorandum Opinion filed October 1, 2020.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-18-00944-CR

**IVIS ESCOBAR-ROSALES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1498480**

## MEMORANDUM OPINION

Appellant Ivis Escobar-Rosales appeals his conviction for murder and raises two issues on appeal. In appellant's first issue he asserts the trial court erred in denying his motion to suppress his statement because the State failed to prove he understood his *Miranda* rights. In appellant's second issue he asserts his guilty plea was not voluntary.[1] Concluding the trial court did not abuse its discretion in denying

---

[1] We address appellant's issues filed in his supplemental brief. In appellant's initial brief he asserted that the trial court erred in failing to file findings of fact and conclusions of law as

appellant's motion to suppress and accepting his guilty plea, we affirm.

## BACKGROUND

Appellant stabbed his girlfriend to death and was subsequently arrested for the offense. Sergeant Mark Reynolds and Deputy Mario Quintanilla of the Harris County Sheriff's Office investigated the offense and developed a photograph of the suspect through social media. Appellant was identified as the suspect and the officers obtained a warrant for appellant's arrest. Appellant was arrested and transported to the Conroe Police Department where he was interviewed by Quintanilla who speaks Spanish. At the start of the interview Quintanilla read appellant his rights pursuant to article 38.22 of the Code of Criminal Procedure and *Miranda v. Arizona*, 384 U.S. 436 (1966) as follows:[2]

> Quintanilla: Okay. Uh, since, since you came here in handcuffs, and you didn't come voluntarily, uh, you know, everyone has rights in the state of Texas. Okay? Uh, I'm going to read you the rights, and you can tell me if you understand them or not. Okay? You have the right to remain silent and to say . . . absolutely nothing. Any statement you make may be used against you at your trial. Do you understand that?
>
> Appellant: Yes.
>
> Quintanilla: Any statement you make may be used as evidence during your trial. Do you understand that?
>
> Appellant: Yeah.
>
> Quintanilla: You have the right to termin- to have a lawyer present to advise you prior to and during any questioning. Do you understand

---

required by article 38.22 of the Texas Code of Criminal Procedure. This court abated the appeal and ordered the trial court to file the requisite findings and conclusions. The trial court complied with this court's order and a supplemental clerk's record with the trial court's findings of fact and conclusions of law was filed with this court. Subsequently, appellant filed a supplemental brief raising the issues we address in this opinion.

[2] This recitation originates from a Spanish-to-English translated transcript of appellant's recorded statement, which was admitted into evidence without objection at the hearing on the motion to suppress.

that?

Appellant: Yes.

Quintanilla: If you are unable to employ a lawyer, you have the right to have a lawyer appointed to advise you prior to and during any questioning. Do you understand that?

Appellant: Yes.

Quintanilla: You have the right to terminate the interview at any time you wish. Do you understand that? Okay. And those are the rights someone has when, when investigators speak to those who didn't come in voluntarily.

Appellant: Yeah.

After officers read appellant his rights, appellant admitted that he stabbed his girlfriend. Appellant told officers that he stabbed her because a person named Edwin Reyes told him to kill her. Reyes threatened appellant telling him that if appellant did not kill the complainant, Reyes would kill appellant.

Appellant testified through an interpreter at the hearing on the motion to suppress that he was originally from Honduras and had lived in the United States for three years. As a child in Honduras appellant attended one year of school. Appellant testified that on the day he was arrested he was in a park in Conroe. He did not remember the police asking him any questions before he was handcuffed and placed in a police car.

Appellant testified that when he was taken to the interview room, he felt nervous. Appellant also testified he was afraid of the police and did not know what to say. The police did not start asking appellant questions until he was in the interview room. Appellant testified that this was his first experience with law enforcement. When asked whether he understood what a jury trial was, he responded, "Truth is, I don't know anything about laws, and I don't know what that is."

In reference to the rights that were read by Quintanilla appellant testified as follows:

Q    Now, did you understand what he had just read to you?

A    Truthfully, I felt really bad, and I didn't know what he was saying to me.

Q    Why did you say yes?

A    I felt nervous.

Q    Did you feel you had the right to say no?

A    The truth is, I felt nervous, like I said, with the fear that I could be sent down. That's why I was afraid.

Q    So when you say you had the fear of being sent down, you're talking about being deported and sent to Honduras?

A    Yeah.

Appellant further testified that he did not know he could stop talking to the police and he felt obligated to keep talking to them. Appellant testified he did not understand any of the rights that the officers read to him "at that moment."

The trial court denied appellant's motion to suppress and entered findings of fact and conclusions of law:

**Findings of Fact:**

- Appellant was detained at the Conroe Police Department because he fit the description of a suspect who stabbed a woman in Harris County;

- Appellant was arrested pursuant to a valid warrant;

- Appellant was not questioned while being detained prior to his arrest;

- Appellant was from Honduras, spoke Spanish, and had "very limited education in Honduras";

- Appellant had never been arrested by police before the interview;

- Appellant was capable of operating a motor vehicle and had been

4

employed at a restaurant as a cook;

- Investigator Quintanilla questioned appellant in Spanish;

- While being questioned appellant did not display any body language that indicated he did not understand what Quintanilla was asking him;

- While being questioned appellant did not state in Spanish or any other language that he did not understand what Quintanilla was saying;

- Before reading appellant his rights Quintanilla asked him some preliminary questions that established, based on appellant's responses, appellant understood the questions Quintanilla was asking him;

- Appellant understood Quintanilla's questions throughout the interview because appellant responded with an appropriate answer that corresponded to the questions being asked;

- Quintanilla read the required rights and warnings, asked appellant if he understood, and appellant replied, "yes" or "yeah";

- Quintanilla did not ask appellant if he wanted to waive the rights that had been read to him;

- Before appellant admitted stabbing the complainant he understood that he could remain silent and could terminate the interview;

- Appellant was "very willing" to talk with law enforcement and law enforcement did not use any force, coercion, duress, trickery, or "anything of the sort" against appellant; and

- Appellant did not appear afraid of the officers or reluctant to talk with them.

The trial court concluded that appellant was fully aware of the rights he was abandoning because:

- he was told what his rights were in his native language;

- he did not demonstrate a lack of understanding;

5

- he never asked the investigator to explain the rights that were read to him because he did not understand;

- he explicitly stated that he understood after each right was read to him; and

- he had the intellectual capacity to understand the rights he waived, and the consequences of doing so.

After the trial court denied appellant's motion to suppress the court proceeded with jury selection. After a jury was seated appellant changed his plea to guilty. Appellant signed a waiver of trial by jury and asked the trial court to assess punishment. The trial court then admonished appellant, pursuant to article 26.13 of the Code of Criminal Procedure as follows:

THE COURT: Are you pleading guilty because you are guilty and for no other reason?

THE DEFENDANT: Because I am.

THE COURT: Has anyone promised you anything to make you plead guilty today?

THE DEFENDANT: No.

THE COURT: Has anyone forced, frightened you or coerced you today to make you plead guilty?

THE DEFENDANT: No.

THE COURT: Are you doing this of your own free will?

THE DEFENDANT: Yes.

THE COURT: Do you understand you still have a right to a jury trial in this matter?

THE DEFENDANT: Yes.

THE COURT: And during the trial you know you can confront and cross-examine your accusers?

THE DEFENDANT: Yes.

THE COURT: And so then, on the record then, Mr. Rosales, you are admitting on February 10, 2016, you did, in fact, intentionally or knowingly cause the death of [the complainant] by stabbing her with a

6

knife; is that correct?

THE DEFENDANT: Yes.

In addition to the above admonishments, appellant was admonished orally and in writing of the immigration consequences of his plea. Appellant signed a written waiver of trial by jury requesting the trial court to determine punishment. The trial court found that appellant intentionally waived his right to a jury trial and intentionally, knowingly, and voluntarily entered a plea of guilty and proceeded to the punishment phase.

ANALYSIS

I.  Motion to Suppress

In his first issue, appellant asserts that the trial court erred in denying his motion to suppress his custodial statement because he did not voluntarily waive his rights under *Miranda v. Arizona*, 384 U.S. at 436, or article 38.22 of the Texas Code of Criminal Procedure. In denying appellant's motion to suppress, the trial court found that appellant's statement was freely and voluntarily given and that he voluntarily waived his rights.

A.  Standard of review and applicable law

We review a trial court's denial of a motion to suppress for an abuse of discretion. *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014). In conducting the review, we give almost total deference to a trial court's express or implied determination of historical facts and consider de novo the court's application of law to the facts. *Alford v. State*, 358 S.W.3d 647, 652 (Tex. Crim. App. 2012). We view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). The trial court is the sole trier of fact and judge of the credibility of witnesses and the weight to be given to their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We

7

will sustain the trial court's ruling if it is reasonably supported by the record and correct on any theory of law applicable to the case. *Laney v. State*, 117 S.W.3d 854, 857 (Tex. Crim. App. 2003).

There are three theories by which a defendant may claim that his statement was not made voluntarily, knowingly, and intelligently and thus may not be used against him: (1) failure to comply with *Miranda*; (2) violation of due process; or (3) failure to comply with article 38.22 of the Texas Code of Criminal Procedure. *Oursbourn v. State*, 259 S.W.3d 159, 169–72 (Tex. Crim. App. 2008); *Umana v. State*, 447 S.W.3d 346, 350 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd). Under the first and second theories, a confession is involuntary "only when there is police overreaching." *Oursbourn*, 259 S.W.3d at 169. Absent police misconduct causally related to the confession, there is no deprivation of due process of law by a state actor and therefore no violation of the Due Process Clause. *Oursbourn*, 259 S.W.3d at 170. Likewise, *Miranda* protects against government coercion to surrender Fifth Amendment rights. *Oursbourn*, 259 S.W.3d at 170. Thus, due-process claims and *Miranda* claims of involuntariness involve an objective assessment of police behavior. *Oursbourn*, 259 S.W.3d at 171.

Claims of involuntariness based on the defendant's state of mind when making a confession are "to be resolved by state laws governing the admission of evidence." *Oursbourn*, 259 S.W.3d at 171. That state law in Texas is article 38.22, the Texas Confession Statute. *Oursbourn*, 259 S.W.3d at 171. Although claims of involuntariness under the Texas Confession Statute may be based on police overreaching, they may also be based on the defendant's state of mind. *Oursbourn*, 259 S.W.3d at 172. Whether or not a suspect voluntarily waived the rights set out in article 38.22 thus can but need not be based on the behavior of the police. *Oursbourn*, 259 S.W.3d at 172. The Texas Court of Criminal Appeals has held that youth,

intoxication, mental capabilities, and other disabilities are usually not enough, by themselves, to render a statement inadmissible under Article 38.22, but they are factors for the fact finder to consider. *Oursbourn*, 259 S.W.3d at 173.

A defendant's statement may be admitted into evidence against him if it appears that he made the statement freely and voluntarily, without compulsion or persuasion. Tex. Code Crim. Proc. art. 38.21. Article 38.22 of the code, entitled "When statement may be used," establishes the procedural safeguards for securing the privilege against self-incrimination. *See Joseph v. State*, 309 S.W.3d 20, 23 (Tex. Crim. App. 2010). No oral statement of an accused made as a result of a custodial interrogation may be admitted against the accused in a criminal proceeding unless (1) the statement was recorded and (2) before the statement but during the recording, the accused was warned of his rights and knowingly, intelligently, and voluntarily waived those rights. *See Miranda*, 384 U.S. at 444–45; *Joseph*, 309 S.W.3d at 23–24.

Article 38.22, section 2(a), requires the defendant be informed of the following rights:

> (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at trial;
>
> (2) any statement he makes may be used as evidence against him in court;
>
> (3) he has the right to have a lawyer present to advise him prior to and during any questioning;
>
> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
>
> (5) he has the right to terminate the interview at any time.

Tex. Code Crim. Proc. art. 38.22, § 2(a).

The State bears the burden of establishing by a preponderance of the evidence

that a defendant knowingly, intelligently, and voluntarily waived his rights. *Joseph*, 309 S.W.3d at 24. It is not required that the recording of the accused's statement contain an express waiver of rights. *Rocha v. State*, 16 S.W.3d 1, 12 (Tex. Crim. App. 2000). A waiver of rights may be inferred from the actions and words of the person interrogated. *Joseph*, 309 S.W.3d at 25.

In evaluating whether appellant knowingly, intelligently, and voluntarily waived his rights, we use a two-pronged test, in which we ask: (1) whether the relinquishment of the right was voluntary by determining whether it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and (2) whether the waiver was made with full awareness of the nature of the rights being abandoned and the consequences of the decision to abandon them. *Id*. We look to the totality of the circumstances in determining whether a statement was made voluntarily. *Id*. The "totality-of-the-circumstances approach" requires the consideration of "all the circumstances surrounding the interrogation," including the defendant's experience, background, and conduct. *Id.* (quoting *Fare v. Michael C.*, 442 U.S. 707, 725 (1979)).

## B.    Voluntariness

It is undisputed that appellant did not expressly waive his rights after they were read to him. The trial court found, however, that appellant's waiver could be implied through his actions and willingness to speak with Quintanilla. The totality of the circumstances surrounding the interrogation shows appellant's waiver was voluntary. That is, the waiver resulted from a free and deliberate choice without intimidation, coercion, or deception.

Immediately after being warned by Quintanilla that he had the right to remain silent and that he did not have to make any statement to anyone, appellant willingly participated in an extensive interview. At no time during the statement did appellant

10

request an attorney and at no time did he ask that the interview be stopped. The lack of intimidation and coercion can be seen during the interview when appellant felt comfortable responding to specific questions and appeared willing in the recording to provide the officers with his account. Appellant did not hesitate and presented his version of events with only occasional questions and prompting by Quintanilla. There also appears to be no possibility that a promise from police could have jeopardized the voluntariness of appellant's statement. The recording reflects that at no time did members of the police department promise appellant anything in exchange for giving a statement.

## C. Awareness

The totality of the circumstances surrounding the interrogation shows appellant's waiver was made with full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them. At the start of the interview officers established that appellant did not understand English. Quintanilla conducted the entire interview with appellant in Spanish and appellant responded in Spanish. Appellant argues that his lack of experience with American law enforcement and the rights afforded him by the United States Constitution "gave him absolutely no understanding that" he did not have to speak with the officers, he could request an attorney at no cost to him, and he could stop answering questions at any time. Before appellant answered any questions, Quintanilla explained to appellant that he was entitled to certain rights. Quintanilla then read appellant each of the rights listed in article 38.22, section 2(a) and asked appellant, after reading each one, whether he understood the particular right. After each, appellant responded "yes" or "yeah." Quintanilla then explained why he wanted to talk to appellant, and a conversation followed regarding events before and after the complainant's murder.

Appellant was adequately advised of his rights and affirmatively indicated

11

that he understood each of his rights. *See Joseph*, 309 S.W.3d at 27. Appellant does not identify any point during the interview in which the officers made promises or coerced him into speaking. Moreover, at no point did appellant request an attorney or request that the interview stop. At the motion-to-suppress hearing appellant contradicted his statements at the time of the recording and said he was nervous and afraid of the officers. The trial court, in its role as fact finder, assessed appellant's credibility at the hearing after reviewing his actions and words during the recorded statement. We are not to second-guess the trial court's assessment of credibility and demeanor of the witnesses. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

The totality of the circumstances shows that appellant knowingly, intelligently, and voluntarily waived his rights under Article 38.22 and *Miranda*. The trial court did not err in denying appellant's motion to suppress. Immediately after being told that he had the right to remain silent, that he did not have to make any statement to anyone, and that any statement he made would be used against him, he willingly participated in an extensive interview with police. Not once did he ask that the interview be stopped, nor did he request an attorney. We overrule appellant's first issue.

## II.    Voluntariness of Guilty Plea

In his second issue, appellant challenges his guilty plea on constitutional and statutory grounds, both of which require a showing that the plea was free and voluntary. *See Boykin v. Alabama*, 395 U.S. 238, 242 (1969) ("It was error, plain on the face of the record, for the trial judge to accept petitioner's guilty plea without an affirmative showing that it was intelligent and voluntary."); Tex. Code Crim. Proc. art. 26.13(b) ("No plea of guilty or plea of nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free

12

and voluntary."). Appellant's argument is the same as to both constitutional and statutory grounds. He contends his plea was not free and voluntary because the record does not show that he understood the nature of his plea and its consequences.

Federal due process requires that "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). A criminal defendant who enters a plea of guilty, by definition, has relinquished his Sixth Amendment rights to a trial by jury and to confront the witnesses against him, as well as his Fifth Amendment privilege against self-incrimination. *McCarthy v. United States*, 394 U.S. 459, 466 (1969). "For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.'" *Id.* (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)).

Appellant, relying in part on *Boykin*, 395 U.S. at 243–44, argues that a violation of due process occurs if the record does not affirmatively demonstrate that appellant understood all of the constitutional rights he was waiving. To the contrary, "the Supreme Court in *McCarthy v. United States*, which was decided during the same term as *Boykin*, expressly stated that the admonishments in the federal equivalent of Article 26.13(a) have 'not been held to be constitutionally mandated' and that these admonishments are 'designed to assist the district judge in making the constitutionally required determination that the guilty plea was truly voluntary.'" *Aguirre–Mata v. State*, 125 S.W.3d 473, 475–76 (Tex. Crim. App. 2003) (quoting *McCarthy*, 394 U.S. at 465).

So long as the record otherwise affirmatively discloses that appellant's guilty plea was adequately informed, due process is satisfied. *Davison v. State*, 405 S.W.3d 682, 687 (Tex. Crim. App. 2013). For appellant to prevail on his constitutional claim,

therefore, it is not enough that the record is unrevealing with respect to whether he was admonished by the trial court; the record also must be silent with respect to whether he otherwise was provided, or nevertheless was aware of, the requisite information to render his guilty plea voluntary and intelligent. *Id.*

Here, in addition to the panoply of admonishments required by article 26.13 of the Code of Criminal Procedure, appellant signed a written waiver of jury trial and written acknowledgement of the immigration consequences of his plea. The waiver of jury trial noted that appellant was charged with a felony less than capital and admonished that if the trial court entered an affirmative finding of a deadly weapon, the court was not authorized to place appellant on community supervision. Appellant does not point to any specific admonishments that he allegedly did not receive but argues that his general lack of understanding of the American judicial system as evidenced by his testimony at the suppression hearing, rendered his plea involuntary.

Appellant also refers to a colloquy with the trial court the night before appellant entered his guilty plea. Appellant expressed a desire to plead guilty but told the trial court he did not remember what happened. The trial court explained to appellant that his plea had to be made voluntarily, intelligently, and knowingly. The court explained that it could not accept a guilty plea if appellant did not remember what had happened. The next morning appellant again expressed his desire to plead guilty, stated he remembered what happened, and was orally admonished by the trial court as described above.

The record is clear that the trial judge properly admonished the appellant as to his statutory rights pursuant to his plea of guilty as is required by article 26.13 of the Code of Criminal Procedure. Appellant made intelligible and appropriate responses to all questions asked of him by the trial court. Nothing in the record

indicates that the appellant was confused or in any way acted involuntarily or unknowingly when he entered a guilty plea. We overrule appellant's second issue.

## CONCLUSION

The trial court's judgment is affirmed.

/s/    Jerry Zimmerer
Justice

Panel consists of Justices Christopher, Jewell, and Zimmerer.

Do Not Publish — Tex. R. App. P. 47.2(b).