**AFFIRM AS MODIFIED; Opinion Filed November 29, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-00064-CR**
**No. 05-22-00065-CR**

**DAVID MCLAIN BAILEY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 265th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F21-00285-R & F20-59605-R**

## MEMORANDUM OPINION

Before Justices Schenck, Reichek, and Goldstein
Opinion by Justice Schenck

David McLain Bailey appeals his convictions for manufacturing of controlled substance with intent to deliver and unlawful possession of a firearm by a felon. In four issues, appellant challenges the sufficiency of the evidence to support the court's deadly weapon finding, the voluntariness of his plea, and the denial of his motion to suppress. In his fifth and sixth issues, Bailey urges this Court to modify the judgments to correctly reflect the record. In a cross-issue, the State urges further modification of both judgments is necessary to accurately reflect the record. We affirm the judgments as modified. Because the issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

BACKGROUND

On the night of October 29, 2020, Dallas Police Officer Justin Burt was patrolling in a high crime area[1] near a Comfort Inn Suites when he observed a black Honda Accord make a turn onto a street without signaling. He also noted the car's rapid acceleration, and he saw the driver, later identified as appellant, turn to look in his direction and "make an overt move to try and basically distance himself from my marked Dallas police car." Officer Burt was unable to catch up to make a traffic stop because he was in a parking lot and unable to safely maneuver his car quickly enough to make the stop.

In the early hours of October 30, Officer Burt later observed the same black Honda pull into the back of a Sonesta parking lot, which shares an entrance from the roadway with the parking lot of the Comfort Inn Suites the officer had been patrolling earlier that night. He called covert officers in the area to observe the car and driver. Those covert officers observed a light-colored Lexus pull up next to the black Honda. A female driver exited the Lexus and spoke to appellant before the trunks of both cars opened. Appellant then exited his car and went to the back of it with the woman. Although the covert officers could not see any items transferred, Officer Burt testified the individuals' actions of meeting in the parking lot of a hotel,

---

[1] Officer Burt described the area as one he frequently patrolled because it is a "[h]igh-drug area, recovered a lot of stolen vehicles, a lot of drug offenses occur in that area, a lot of prostitution. Everything that you can imagine, guns and drugs."

both opening trunks, walking from one car to another, speaking briefly, and neither entering the hotel itself were consistent with someone moving something from one vehicle to another. Appellant then got back into the black Honda and drove out of the parking lot and onto the street. Officer Burt observed that appellant failed to signal a right turn and failed to yield at a stop sign.

After effecting a stop, Officer Burt observed the driver of the black Honda was the same individual he had observed driving the car earlier that night. He also checked the car's license plate registration and found a regional warrant for the car for a different person than appellant. When Officer Burt approached the car and spoke to appellant, he noticed appellant's license was "very new" and that appellant was "exceptionally nice," which was not typical for traffic stops at 3 o'clock in the morning.

As part of the traffic stop, the officer walked around the front of the black Honda to look through the front windshield to see if there was anything dangerous or an open container within reach of appellant and if the registration sticker matched the car's VIN. Officer Burt observed a bulge in appellant's waistband, which led him to believe appellant could have a firearm. The officer returned to his car and checked appellant's criminal history, which included drug offenses, speeding tickets, and an eleven year gap before more recent speeding offenses. Officer Burt then returned to appellant and asked him to step out of his car. When appellant did so, the officer placed appellant's hands over his head and patted him down. When the

officer patted the bulge on appellant's waist, he asked what it was. Appellant admitted the bulge in his waistband was a gun. Officer Burt took the gun from appellant and placed him in handcuffs. When asked what was in his pockets, appellant stated he had methamphetamine. When asked if there was anything else in the car, appellant responded there were other weapons in the car, as well as marijuana. Officer Burt asked appellant how long he had been in possession of the car, and appellant told him "approximately a couple of days." During a search of appellant's car, Officer Burt found several weapons, including the components of an AR-type rifle[2] and two semiautomatic handguns, as well as two bags of marijuana, a scale, six magazines of ammunition, 18 cell phones, two tablets, and one laptop.

Appellant was indicted for the unlawful possession of a firearm, having been convicted previously of possession of a controlled substance, enhanced with previous convictions for attempted capital murder and possession of a controlled substance. He was later indicted for manufacture of a controlled substance with intent to deliver methamphetamine in an amount of 4 grams or more but less than 200 grams, enhanced with a previous conviction for attempted capital murder.[3]

On September 23, 2021, appellant appeared before the trial judge and entered open pleas of guilty and true to the enhancement paragraphs. At the hearing on

---

[2] The officer testified at appellant's punishment hearing that, "All that needs to be completed is drilling out where the trigger goes on the receiver."

[3] He was also indicted for a state jail felony of possession of marijuana, but the State later agreed to dismiss that case after appellant agreed to enter guilty pleas to the other two cases.

appellant's pleas, the judge stated on the record that the State had notified her it had entered a notice that if the case proceeded to trial, it would seek a deadly weapon finding. The judge accepted appellant's pleas and stated the hearing on appellant's sentencing would take place at a later date.

On November 9, 2021, after hearing evidence on punishment, the trial court found appellant guilty of both offenses, found the enhancement paragraphs to be true, and assessed punishment of fifteen years' confinement in each case, to run concurrently. The trial court also made an affirmative finding that a deadly weapon, to wit, a firearm, was used or exhibited in trial court cause number F20-59605. Appellant filed his notice of appeal in each case.

**DISCUSSION**

## I. Evidence to Support Deadly Weapon Finding Was Sufficient

In his first issue, appellant challenges the sufficiency of the evidence to support the deadly weapon finding in trial court cause number F20-59605. More particularly, he urges the indictment in that case did not allege a deadly weapon was used, he did not judicially confess or plead true to the deadly weapon allegation, and no evidence was presented to the trial court to support the finding.

The State concedes that the indictment did not include a deadly weapon allegation, despite the State's motion to amend same to include the allegations and the trial court's grant of same, and that neither appellant's judicial confession nor his other plea papers support the deadly weapon finding. But, the State argues that

appellant received notice of the State's intent to seek a deadly weapon finding in the hearing on his pleas, including in the trial court's admonishment:

> In the F20-59605, you're indicted for a first-degree felony. There is an enhancement paragraph on your indictment and there's also an affirmative finding that you used or exhibited a deadly weapon, to-wit, a firearm.

The State also argues that the evidence that appellant possessed guns along with the illegal drugs he was charged with possessing is sufficient to support the deadly weapon finding.

We review the sufficiency of the evidence under the standard set out in *Jackson v. Virginia*, 443 U.S. 307 (1979); *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013). We examine all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Matlock*, 392 S.W.3d at 667. We defer to the trier of fact's determinations of credibility and may not substitute our own judgment for that of the fact finder. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010) (plurality op.); *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000).

To support a deadly weapon finding, the deadly weapon must be "used" or "exhibited" during the commission of a felony offense, or during immediate flight from the commission of a felony offense, and the defendant used or exhibited the deadly weapon, or was a party to the offense and knew that a deadly weapon would be used or exhibited. TEX. CODE CRIM. PROC. art. 42A.054.

The "use" element can be satisfied by evidence the accused, in the commission of a felony, used the weapon to protect or facilitate the care, custody, and management of contraband. *Coleman v. State*, 145 S.W.3d 649, 654 (Tex. Crim. App. 2004). A deadly weapon is "exhibited" if it was consciously shown, displayed, or presented during the commission of a felony offense. *Patterson v. State*, 769 S.W.2d 938, 941 (Tex. Crim. App. 1989).

In determining whether a weapon was used as a deadly weapon in furtherance of possession of a controlled substance, reviewing courts consider the cumulative effect of several factors, including: (1) the type of gun involved; (2) whether the gun was loaded; (3) whether the gun was stolen; (4) the proximity of the gun to the drugs, drug paraphernalia, or drug manufacturing materials; (5) the accessibility of the gun to whomever controlled the premises; (6) the quantity of drugs involved; and (7) any evidence that might demonstrate an alternative purpose for the presence of the gun. *Coleman*, 145 S.W.3d at 658–60 (Cochran, J., concurring); *Hall v. State*, No. 05-18-00755-CR, 2019 WL 3773852, at *5 (Tex. App.—Dallas Aug. 12, 2019, no pet.) (mem. op., not designated for publication). The focus is on the proximity of the gun to the drugs, not the proximity of the gun to the defendant. *McClenon v. State*, Nos. 05-14-00833-CR, 05-14-00834-CR, 2015 WL 4739589, at *5 (Tex. App.—Dallas Aug. 11, 2015, pet. ref'd) (mem. op., not designated for publication) (citing *Coleman*, 145 S.W.3d at 654–55).

In this case, the evidence established that the officer received information from covert officers that appellant went to the back of his car with another person, "possibly transferring something from trunk to trunk," which the officer noted "is indicative of narcotics trafficking, gun sales." Officer Burt testified that, during a search of appellant's car, he found in the trunk a mostly completed AR rifle,[4] two semiautomatic handguns, and six magazines of ammunition. He also testified that two large bags of marijuana were found in a search of the car appellant was driving. Appellant testified at the punishment hearing that the car did not belong to him and that he did not know everything that was in the trunk of the car, but he also admitted he "knew, yes, there were guns and dope in there." We conclude this evidence established appellant used or exhibited the rifle and guns in furtherance of possessing controlled substances. *See Smith v. State*, 176 S.W.3d 907, 920 (Tex. App.—Dallas 2005, pet. ref'd) (unloaded firearms stored close to marijuana facilitated appellant's possession of marijuana).

Based on the evidence, viewed in the light most favorable to the verdict, the trial court could reasonably find appellant used or exhibited a deadly weapon while committing the offenses of possession of illegal substances beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19. Consequently, the evidence is legally sufficient to support the deadly weapon finding.

---

[4] The officer testified at appellant's punishment hearing that, "All that needs to be completed is drilling out where the trigger goes on the receiver."

Appellant also argues that his mere possession of firearms in the commission of a nonviolent offense such as possession of controlled substances is insufficient to support the affirmative deadly weapon finding.  He urges that the evidence does not establish that "other people were put in actual danger."  *See Drichas v. State*, 175 S.W.3d 795, 798 (Tex. Crim. App. 2005) (en banc) (requiring evidence of deadly weapon finding to demonstrate (1) object meets statutory definition, (2) deadly weapon was used or exhibited during transaction from which felony conviction was obtained, and (3) other people were put in actual danger).  But, the court of criminal appeals has more recently rejected this argument, holding that a deadly weapon finding, as the basis for enhancing a sentence, can be made even in the absence of actual harm or threat.  *See Prichard v. State*, 533 S.W.3d 315, 320 (Tex. Crim. App. 2017).

We overrule appellant's first issue.

## II. Plea of Guilty Entered Intelligently and Voluntarily

In his second and third issues, appellant argues his plea in trial court cause number F20-59605 should be vacated because it was not entered intelligently and voluntarily in violation of constitutional due process and article 26.13 of the code of criminal procedure.  Appellant urges that the record shows that there was confusion regarding the deadly weapon allegation such that his plea was not voluntarily or intelligently made.  More particularly, he points to the indictment that was never amended to include the deadly weapon allegation, as well as the trial court's

admonishments at the plea hearing that he complains were unclear and inaccurate because they "told Mr. Bailey that the deadly weapon finding would be automatically assessed if he pleaded guilty to the offense and true to the prior conviction." He argues that as a result of the inaccurate admonishments he did not know a deadly weapon finding "could or would be entered." Appellant also complains the plea agreement paperwork he signed was contradictory because the box next to "affirmative finding the defendant used or exhibited a deadly weapon" is checked but annotated "N/A" next to "to-wit," and the box next to "Other: OPEN PLEA WITH DEADLY WEAPON FINDING – FIREARM" is checked.

The State responds that, while it neglected to formally amend the indictment, the trial court's admonishment clearly mentions a deadly weapon finding and the judge then inquired further about appellant's understanding of his plea, such that appellant fails to demonstrate the plea was not entered intelligently and voluntarily in violation of constitutional or state law.

Article 26.13(a)(1) requires a trial court to admonish a defendant about the punishment range attached to an offense before accepting a plea of guilty or no contest. *See* CRIM. PROC. art. 26.13(a); *Hughes v. State*, 833 S.W.2d 137, 139 (Tex. Crim. App. 1992).[5] An admonishment that substantially complies with article 26.13(a)(1) is sufficient. *See* CRIM. PROC. art. 26.13(c). When the record reflects a

---

[5] As will be established *infra*, the requirements for compliance with article 26.13 are more settled than those for compliance with due process. Accordingly, we will address appellant's third issue before his second.

trial court admonished a defendant under article 26.13(a)(1), even though incorrectly, *and* in fact assessed punishment within the actual and stated range for the offense, substantial compliance will be deemed to have occurred, and there is a *prima facie* showing that the defendant's plea was knowing and voluntary. *See Hughes*, 833 S.W.2d at 140; *Robinson v. State*, 739 S.W.2d 795, 801 (Tex. Crim. App. 1987). Once it is shown a trial court substantially complied with article 26.13(a)(1) and that a defendant's plea was *prima facie* knowing and voluntary, the burden shifts to the defendant to show affirmatively both that he was unaware of the consequences of his plea and that he was misled or harmed by the trial court's admonishment. *See* CRIM. PROC. art. 26.13(c); *Robinson*, 739 S.W.2d at 801.

Notwithstanding error, if any, in admonishing appellant, the trial court assessed punishment both within the actual range for the offense and the stated range. Consequently, the trial court's admonishment substantially complied with article 26.13(a)(1), and appellant's guilty plea was *prima facie* knowing and voluntary. The burden shifted to appellant to show otherwise.

The record demonstrates there may have been confusion regarding whether evidence was necessary to support any affirmative deadly weapon finding, but appellant was aware that a deadly weapon finding could, if not would, be made. *See Friemel v. State*, 465 S.W.3d 770, 774 (Tex. App.—Texarkana 2015, pet. ref'd) (concluding deadly weapon admonishment not necessary under article 26.13 because deadly weapon finding does not affect length of defendant's sentence).

Thus, we conclude appellant failed to rebut the presumption that his guilty plea to the offense in trial court cause number F20-59605 was voluntary under article 26.13. Accordingly, we overrule appellant's third issue.

An agreement to plead guilty entails a waiver of three significant constitutional rights: the right against self-incrimination; the right to confrontation; and the right to a trial by jury. *Ex Parte Palmberg*, 491 S.W.3d 804, 807 (Tex. Crim. App. 2016) (citing *Boykin v. Alabama*, 395 U.S. 238, 243 (1969)). Because such significant constitutional rights are at stake, due process requires that their relinquishment in the course of a guilty plea be undertaken voluntarily, with sufficient awareness of the consequences. *Id.* (citing *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). A defendant must have sufficient awareness of the relevant circumstances and must possess an understanding of the law in relation to the facts. *Id.* To determine whether a defendant's "awareness" was "sufficient" at the time of his plea, a reviewing court looks to whether the plea was a voluntary and intelligent choice among the alternative courses of action open to the defendant. *Id.*

Texas courts have held that *Boykin* did not specifically set out what must be in the record to comply with its mandate. *See Davison v. State*, 405 S.W.3d 682, 687 (Tex. Crim. App. 2013). And, *Boykin* clearly did not hold that due process requires the equivalent of the Article 26.13(a) admonishments or an admonishment on the range of punishment. *See id.* So long as the record *otherwise* affirmatively discloses that the defendant's guilty plea was adequately informed, due process is

–12–

satisfied. *See id.* For the appellant to prevail on his constitutional claim, therefore, it is not enough that the record is unrevealing with respect to whether he was admonished by the trial court; the record must also be silent with respect to whether he was *otherwise* provided, or nevertheless aware of, the requisite information to render his guilty plea voluntary and intelligent. *See id.*

Here, appellant signed a plea agreement that set forth appellant's waiver of his right against self-incrimination, the right to confrontation, and the right to a trial by jury. Further, the trial judge inquired of appellant if he was entering his pleas knowingly and voluntarily, whether he read the plea agreement and other paperwork, and whether he understood all the rights he "gave up when [he] signed all that paperwork." Appellant answered yes to all the foregoing questions.

Even assuming the record did not establish some awareness on the part of appellant of the potential for an affirmative deadly weapon finding, appellant has not cited any authority that requires any evidence to establish his awareness of the potential for an affirmative deadly weapon finding or the State's burden of proof on same. Accordingly, we overrule appellant's second issue.

### III. Trial Court Did Not Err by Denying Appellant's Motion to Suppress

In his fourth issue, appellant argues the trial court abused its discretion by denying his motion to suppress his detention, his arrest, and all evidence seized or

made in connection with his detention and arrest.[6]  He urges that, under the circumstances presented in this case, Officer Burt did not have reasonable suspicion to remove appellant from his car.  The State responds Officer Burt's decision to remove appellant from his car to conduct a weapons frisk was objectively reasonable under the circumstances.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review.  *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007).  We give almost total deference to the trial court's determination of historical facts, and we review de novo the trial court's application of law to facts not turning on credibility and demeanor.  *Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005).  We do not engage in our own factual review; instead, the trial judge is the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony.  *St. George*, 237 S.W.3d at 725.  We review the record

---

[6] More particularly, appellant moved to suppress the following:

   a. The detention and arrest of Defendant at the time and place in question and any and all evidence which relates to the detention and arrest.

   b. All tangible evidence seized by law enforcement officers or others in connection with the detention and arrest of Defendant in this case or in connection with the investigation of this case.

   c. All written and oral statements made by Defendant to any law enforcement officers or others in connection with this case.

   d. Testimony of law enforcement officers or others concerning any action of Defendant while under detention or arrest in connection with this case.

   e. Testimony of law enforcement officers or others concerning the tangible evidence or statements to which reference was made above.

to determine whether the trial court's ruling is supported by the record and is correct under some theory of law applicable to the case. *Id.*

The Fourth Amendment permits a warrantless detention of a person, short of a full-blown custodial arrest, if the detention is justified by reasonable suspicion. *Terry v. Ohio*, 392 U.S. 1, 28 (1968); *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). The test for reasonable suspicion is an objective one that focuses solely on whether an objective basis exists for the detention and disregards the officer's subjective intent. *Terry*, 392 U.S. at 21–22. An officer has "reasonable suspicion to detain a person if he has specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id.* at 21–22; *York v. State*, 342 S.W.3d 528, 536 (Tex. Crim. App. 2011). Articulable facts must amount to more than a mere inarticulate hunch, suspicion, or good faith suspicion that a crime was in progress. *Williams v. State*, 621 S.W.2d 609, 612 (Tex. Crim. App. 1981). The facts must show (1) unusual activity, (2) some evidence that connects the detainee to the unusual activity, and (3) some indication that the unusual activity is related to crime. *Derichsweiler*, 348 S.W.3d at 916.

The record from the hearing on the motion to suppress contains the following evidence. Officer Burt testified the area in which he stopped appellant is "crime ridden," specifically "[a] lot of drug offenses take place in that area, lots of prostitution, violent offenses, gun-related offenses."

When he first encountered appellant in his car at about eleven o'clock on or about October 29, 2020, he noted that appellant's car was moving at a high rate of speed and failed to signal before turning into a hotel's parking lot. Because the officer was in his own car sitting in a parking lot and there was a lot of foot traffic, he was unable to safely maneuver out onto the roadway to stop appellant.

A few hours after the first incident, in the early hours of October 30, 2022, Officer Burt saw appellant driving again into the same hotel entrance and turning without using a turn signal.[7] Because he again could not safely maneuver his car to where appellant had parked, the officer contacted some police officers operating in a covert capacity, gave them appellant's car description, and appellant's description. The covert officers reported back to Officer Burt that they observed a man fitting appellant's description meet with a woman driver in another car and both move to the trunks of the cars, open and close the trunks, and return to their respective cars before leaving the parking lot of the hotel. The officer testified those reported observations led him to believe there was an exchange of drugs, money, or both.

Officer Burt then drove onto the street to see if either appellant or the woman driver committed any violations while driving in order to support a traffic stop. He observed appellant in his car failing to signal a turn and failing to yield to a stop sign.

[7] Officer Burt explained that the Comfort Inn Suites where he was patrolling is next to a Sonesta and a third hotel. When he first observed appellant, the officer was in the parking lot of the Comfort Inn Suites and observed appellant drive into the parking lot of the Sonesta, "which is the next entrance down" the roadway from the Comfort Inn Suites. The second time he observed appellant, appellant drove into that same entrance to the parking lot of the Sonesta.

The officer turned on his lights and sirens, and appellant pulled over to a construction area.

Before approaching appellant, Officer Burt checked the car's plate and discovered a warrant for possession of controlled substance attached to the registered owner of the vehicle appellant was driving. The registered owner was a Hispanic female, and appellant is a white male. As part of the traffic stop, Officer Burt looked around the front of the car to see if the registration sticker and VIN plate appear to be intact and, while doing so, noticed a "bulge" in appellant's left front pants near his waistline, which he believed could be a weapon or narcotics or "could be a sock." Officer Burt asked to see appellant's license and questioned him about the ownership of the car.

Officer Burt returned to his car and checked appellant's criminal history and discovered several traffic and drug offenses until approximately 2000 and then again more recent offenses beginning in 2019. The distance in time without offenses and appellant's demeanor—referring to the officer as "boss"—caused Officer Burt to believe appellant had spent time in prison. After considering appellant's offenses, which included felony drug offenses, unlawful possession of a firearm, and a murder charge, the officer thought back to the "bulge" and concluded it was consistent with a handgun. The belief that appellant had a handgun on him created a safety concern for Officer Burt. He then asked another officer to cover him while he asked appellant to step out of his car before conducting a frisk of appellant's person for weapons.

–17–

Officer Burt's testimony is supported by video from his body camera, which was entered into evidence during the hearing. At the hearing, Officer Burt testified that he can be heard to say to the other officer that he wanted appellant to exit the car appellant was driving because "[h]e is a felon." Officer Burt testified that the context of that decision was appellant's violent criminal history, his previous offense of unlawful possession of a firearm, the gap in his criminal history, the behavior he observed upon approaching appellant's car, how appellant was operating his car, and the reported observations about appellant meeting the other driver and opening their trunks. Officer Burt also testified that his reason for asking appellant to get out of his car was because based on his training and experience and what he knew of appellant's criminal history, he believed appellant had a handgun in his waistband.

Appellant argues that Officer Burt did not have reasonable suspicion to detain him after completing the traffic stop. He urges that the officer only decided to remove appellant from the car after he learned appellant was a felon and that such knowledge did not transform the circumstances to ones to support a reasonable suspicion. The State responds that appellant's criminal history was one of many reasons to support Officer Burt's decision to order appellant out of the car and to conduct a weapons frisk on him.

Indeed, a traffic stop made for the purpose of investigating a traffic violation must be reasonably related to that purpose and may not be prolonged beyond the time to complete the tasks associated with the traffic stop. *Lerma v. State*, 543

S.W.3d 184, 190 (Tex. Crim. App. 2018). And, "[o]nce the computer check is completed, and the officer knows that the driver has a current valid license, no outstanding warrants, and the car is not stolen, the traffic stop investigation is fully resolved. *However*, if an officer develops reasonable suspicion that the driver or an occupant of the vehicle is involved in criminal activity the officer may continue questioning the individual regardless of whether the official tasks of a traffic stop have come to an end." *See id.* at 191 (emphasis added). Further, during the course of a detention, an officer may, in certain circumstances, conduct a pat-down search of an individual to determine whether the person is carrying a weapon. *See id.* In order to justify a pat-down, the officer must reasonably believe that the suspect is armed and dangerous, such that the officer can point to specific and articulable facts which reasonably led him to conclude that the suspect might possess a weapon. *See id.* Reasonable suspicion in this context is based on an objective assessment of the officer's actions in light of the facts and circumstances surrounding the detention. *See id.*

Here, Officer Burt pointed to specific and articulable facts that the area was one of high crime, appellant had been observed by other officers moments before the traffic stop to be engaging in activity that in the officer's experience indicated illegal drug activity, appellant had a criminal history that included unlawful possession of a firearm, and the officer observed a bulge near appellant's waistband that he correctly surmised to be a weapon given the circumstances. Any or all of

–19–

those circumstances are sufficient to trigger the government's legitimate and weighty interest in officer safety and outweigh the de minimis additional intrusion here of requiring a driver, already lawfully stopped, to exit the vehicle. *See Rodrguez v. United States*, 575 U.S. 347, 1615–16 (2015) (noting "traffic stops are especially fraught with danger to police officers") (internal quotations omitted). Thus, we conclude the trial court did not err by denying appellant's motion to suppress. We overrule appellant's fourth issue.

## IV. Modification of the Judgments

In his fifth issue, appellant complains that, although both of the trial court causes were heard in a single criminal action, court costs were assessed in both, such that the duplicative costs from trial court cause number F21-00285 should be deleted. The State agrees that appellant was convicted of two offenses in a single criminal action and that duplicative courts costs were assessed in each case. The State also agrees that the duplicative cost should be deleted from the judgment on the offense of the lower degree, trial court cause number F21-00285.

We have the power to modify an incorrect judgment to make the record speak the truth when we have the necessary information before us to do so. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993); *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd) (en banc).

Where a trial court hears all cases against a defendant together in a single criminal action, the court is to assess each court cost or fee only once, in the judgment of the highest category offense for which the defendant is convicted. *See* TEX. CODE CRIM. PRO. art. 102.073(a), (b); *see, e.g.*, *Cates v. State*, 402 S.W.3d 250, 252 (Tex. Crim. App. 2013) (concluding where trial court erroneously includes certain amounts as court costs in judgment, appeals court should modify judgment to delete erroneous amount).

The record reflects that appellant was convicted of two offenses in a single criminal action, but the trial court assessed court costs of $290 in the unlawful possession of a firearm case (trial cause number F21-00285) and $290 in the methamphetamine case (trial cause number F20-59605). The drug offenses are first degree felonies, while unlawful firearm possession is a third degree felony. *See* TEX. HEALTH & SAFETY CODE § 481.112(d); TEX. PENAL CODE § 46.04(e). We modify the judgment in the unlawful possession of a firearm (trial cause number F21-00285) to reflect court costs of $0.

We thus sustain appellant's fifth issue.

The State also argues in a cross-issue that, although the cost bill totals $305, the judgments each assessed only $290 and urges that we modify the judgment in trial court cause number F20-59605 to be $305. We note that the difference between the amount of $290 in the judgments and $305 in the cost bill is an installment plan fee of $15. As the court of criminal appeals as held, when a case is appealed, such

a fee, otherwise known as a time payment fee, assessed on the date of judgment is premature and must be struck in its entirety. *See Dulin v. State*, 620 S.W.3d 129, 130–33 (Tex. Crim. App. 2021). Here, appellant timely appealed the trial court's judgment such that the trial court properly refrained from assessing any installment plan, or time payment, fee. We overrule the State's cross-issue.

In his sixth issue, appellant urges that this Court reform the judgment in trial court cause number F20-59605 to reflect that he pleaded true to only one enhancement paragraph and that there was no second enhancement paragraph. The State agrees.

The record reflects that one prior felony conviction was alleged for enhancement purposes in the indictment on possession with intent to deliver methamphetamine in trial court cause number F20-59605, that appellant pleaded true to the sole enhancement paragraph, and the trial court impliedly found the sole enhancement paragraph to be true by admonishing on and sentencing appellant within the enhanced punishment range. *See, e.g.*, *Hightower v. State*, No. 05-17-00697-CR, 2018 WL 3135147, at *5 (Tex. App.—Dallas June 27, 2018, pet. ref'd) (mem. op., not designated for publication) ("Although the trial court did not make an express finding on the first enhancement paragraph, appellant's plea of true together with other evidence supported an implied finding in the absence of any other evidence that the trial court rejected the State's proof on the first enhancement." (citing *Donaldson v. State*, 476 S.W.3d 433, 439 (Tex. Crim. App.

2015)).  The trial court's judgment, however, mistakenly reflects appellant pleaded true and that the trial court found true a second enhancement paragraph.  Therefore, we modify the "Plea to the 2nd Enhancement Paragraph" and "Findings on 2nd Enhancement Paragraph" sections in the judgment provisions to state "N/A".  *See Asberry*, 813 S.W.2d at 529–30.

## CONCLUSION

We modify the judgment in the unlawful possession of a firearm (trial cause number F21-00285) to reflect court costs of $0, modify the judgment in the methamphetamine case (trial cause number F20-59605) to reflect only one enhancement paragraph, and affirm both judgments as modified.

/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

DO NOT PUBLISH
TEX. R. APP. P. 47
220064F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAVID MCLAIN BAILEY,
Appellant

No. 05-22-00064-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F21-00285-R.
Opinion delivered by Justice
Schenck. Justices Reichek and
Goldstein participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:

reflect court costs of $0.

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 29th day of November, 2022.



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

DAVID MCLAIN BAILEY,
Appellant

No. 05-22-00065-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 265th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F20-59605.
Opinion delivered by Justice
Schenck. Justices Reichek and
Goldstein participating.

Based on the Court's opinion of this date, the judgment of the trial court is
**MODIFIED** as follows:
   "Plea to the 2nd Enhancement Paragraph" and "Findings on 2nd
   Enhancement Paragraph" sections read "N/A."
As **REFORMED**, the judgment is **AFFIRMED**.


Judgment entered this 29th day of November, 2022.